Kleizer *et ux. v.* Symmes.

---

KLEIZER ET UX. *v.* SYMMES.

PRACTICE.—*Motion to Strike Out.*—*Bill of Exceptions.*—Where a motion to strike out a paragraph of a pleading is overruled, this ruling must be reserved by bill of exceptions, to be available on appeal.

SLANDER.—*Justification.*—*Pleading.*—In an action for slanderous words spoken by the defendant, he justified, on the ground that he was the pastor of the church of which the plaintiff was a member; that by the rules and regulations of the church the ruling elders composed the session of the church, and the pastor was the moderator thereof; and that if said words were spoken, they were used in the course of church discipline, to the session, in the progress of the investigation of certain rumors against the chastity of the plaintiff, a certain rule of the church, of which a copy was set out, authorizing the investigation of charges of crimes, and were spoken without malice, and

in good faith. In a second paragraph of answer it was alleged that the words, if spoken, were spoken to a member of the session who had not attended a meeting of the session, and in communicating to him the charges, etc., which defendant did by direction of the session, without malice.

*Held,* that it was not necessary to set out with the paragraphs of answer the rules constituting the elders a session and the pastor the moderator thereof.

*Held,* also, that it was no objection to the paragraphs that they neither denied nor admitted in terms the speaking of the words, as the statute provides that what is not specifically denied shall be taken as true in the pleading.

*Held,* also, that the paragraphs of the answer were good, and that the word " crimes," in the rules, was not confined to statutory crimes, but included a violation of the moral law or of duty as a member of the church. Written charges were not necessary to authorize the investigation. PETTIT, C. J., dissented.

APPEAL from the Boone Circuit Court.

DOWNEY, J.—The appellants sued the appellee for slanderous words spoken by the defendant of the female plaintiff, charging her with adultery. There are two paragraphs in the complaint. The first alleges the speaking of the slanderous words in the presence and hearing of N. Kellogg, N. Bryan, and others ; the second charges the speaking of other words in the presence and hearing of Richard Brand. No question is made as to the sufficiency of the complaint.

The defendant answered in three paragraphs; the first and second were special, and the third was the general denial. The plaintiffs moved the court to strike out the first and second paragraphs of the answer, because the matters set up therein might be given in evidence under the general denial. This motion was overruled, but the point was not reserved by bill of exceptions, and is not before us, though it is assigned as error. The plaintiffs then demurred separately to the first and second paragraphs; their demurrers were overruled, and they excepted.

The first and second paragraphs are as follows:

" 1st Par. The defendant, for answer to the first paragraph of the plaintiffs' complaint herein, says that at the time mentioned in the plaintiffs' first paragraph of complaint, to wit, the 25th day of November, 1868, and long before, this defendant was the pastor and in charge of the Presbyterian Church

of Lebanon, Indiana, and that Norman P. Kellogg, Horace C. Wheeler, Nathaniel Bryan, James S. Hamilton, David M. Burns, and Richard Brand were ruling elders, and as such, constituted the session for the government of said church, and the defendant, as pastor, by the rules and regulations for the government of the same, was moderator and a member of said session; that the plaintiffs then were, and had been for a long time before said time, members of said church, and subject to its rules of discipline; that the elders and said pastor, composing said session aforesaid, did then and there, at said time mentioned in said first paragraph of said complaint, meet as a session, having been called together by this defendant, at the special instance and request of said plaintiff Henry G.; that whatever words were, at said meeting of said session, by said defendant, spoken in the presence of said plaintiff Henry G., to said elders or to said Henry G., of and concerning the said plaintiff Frances A., and of and concerning her said character for virtue and chastity, if any, were by him so spoken as said pastor aforesaid, and in the regular course of church discipline, and in accordance with the following rule, adopted for the government of said church in like cases, which is copied herewith and made a part hereof, to wit: 'Where any person is charged with a crime, not by an individual or individuals coming forward as accusers, but by general rumor, the proper judicatory is bound to take immediate cognizance of the affair.' That certain general rumors, derogatory to the character of the said plaintiff Frances A. for chastity and virtue, had, before said time mentioned in said first paragraph, come to the knowledge of said session and defendant, and that said rumors had become general and widely spread, and were rather gaining strength than declining, by which it was made the duty of said session, and defendant as a member thereof, to investigate and inquire into said rumors regarding said plaintiff Frances A., she being a member of their said church; and that whatever words, or conversation, or charges, if any, were made and uttered by said defendant, at said

meeting of said session, were only spoken and uttered in the progress of the investigation of said general rumors, made obligatory upon said session by said rule aforesaid, and were so uttered and spoken without any malice whatever, secretly, confidentially, and in good faith, without any intention whatever to injure the good name, fame, or character of said plaintiff Frances A., but only in the discharge of the duties devolved on said defendant by virtue of his said office, and in the regular course of church discipline. Wherefore the defendant prays judgment for costs, and other proper relief.

"Par. 2d. The defendant, for answer to the second paragraph of the plaintiffs' complaint herein, says that at the time mentioned in the second paragraph of plaintiffs' complaint herein, and long before, this defendant was the pastor and in charge of the Presbyterian Church of Lebanon, Indiana, and that Norman P. Kellogg, Horace C. Wheeler, Nathaniel Bryan, James S. Hamilton, David M. Burns, and Richard Brand were ruling elders, and as such constituted the session for the government of said church, and the defendant, as pastor, by the rules and regulations for the government of said church, was moderator and a member of said session; that the plaintiffs were, and had been for a long time before said time, members of said church, and subject to its rules of discipline; that certain general rumors, derogatory to the character of the said Frances A. for chastity and virtue, had come to the knowledge of defendant and members of said session, before said time mentioned in said second paragraph of plaintiffs' complaint; that said rumors had become general and widely spread, and were rather gaining strength than declining, by which it became and was the duty of defendant and said session, in the discharge of their duties as officers of said church, to investigate and inquire into said rumors regarding the character of said plaintiff Frances A., she being a member of said church, by and on account of a certain rule, adopted for the government of said church in like cases, which is copied herewith and made a

part hereof, and is as follows, to wit: 'Where any person is charged with a crime, not by an individual or individuals coming forward as accusers, but by general rumors, the proper judicatory is bound to take immediate cognizance of the affair.' That in pursuance of said rule, and for the purpose of investigating said rumors, as a session, the same being the proper judicatory of said church, this defendant and a portion of said session had, previous to said time mentioned by plaintiffs in said second paragraph, to wit, on the 11th day of November, 1868, had a meeting, and had consulted and freely talked over said rumors, and at said meeting said Brand, a member of said session, was not present, and said defendant was, by the members of said session present at said meeting, appointed and requested to inform said Brand of said consultation and the investigation of said rumors by said session at said meeting, and to request said Brand to be present at the next meeting of said session; that whatever words, phrases, or reports were spoken or uttered by said defendant, in his said conversation with said Brand, at or about the time mentioned in said second paragraph of plaintiffs' complaint, or at any other time, of and concerning said plaintiff Frances A., or of and concerning her character for chastity and virtue, were by said defendant so uttered and spoken in his official capacity, and in accordance with his instructions from said session; that all of his communications to said Brand regarding the said plaintiff and her character were by him made, if any, secretly, confidentially, and in good faith, without any malice whatever, and without any intention whatever to injure the good name, fame, or character of said plaintiff Frances A., but only in the discharge of the duties devolved upon the said defendant by virtue of his said office, and in the regular course of church discipline, and to said Brand as a member of said judicatory."

Upon the overruling of the demurrers to the first and second paragraphs of the answer, the plaintiffs refused to reply to them, or to plead further, and, thereupon, final judg-

ment was rendered in favor of the defendant. The action of the court in overruling these demurrers is the only question in the case.

The first ground of objection urged against the paragraphs is, that the rules and regulations of the church by which the ruling elders are constituted the session of the church, and by which the pastor is made moderator, or copies thereof, are not filed with the paragraphs of the answer. It is contended that sec. 78, 2 G. & H. 104, which provides, that when any pleading is founded on a written instrument, or on account, the original, or a copy thereof, must be filed with the pleading, is applicable to the case, and requires the filing of such original or copy. We do not think so. The rules and regulations in question are neither a written instrument, nor an account, within the meaning of the section in question. *Lytle* v. *Lytle*, 37 Ind. 281.

It is further objected to the paragraphs that they ought to expressly admit the speaking of the words, and then proceed to allege the matter in justification, whereas they do not so admit the speaking of the words. We do not see how this can be a valid objection to the paragraphs of the answer, for the reason that it is expressly enacted in the code that every material allegation of the complaint not specifically controverted by the answer, and every material allegation of new matter in the answer not specifically controverted by the reply, shall, for the purposes of the action, be taken as true. 2 G. & H. 100, sec. 74. The first and second paragraphs of the answer certainly do not specifically, or in any other way, deny the speaking of the words. The speaking of the words is, therefore, admitted. Here, so far as the objections in the briefs of counsel for the appellants are concerned, we might stop, but we ought, probably, to present the points involved a little more fully.

The doctrines of the law relating to cases of this kind are quite well settled, although there have been few occasions to apply them in the cases which have come before this court. In *Coombs* v. *Rose*, 8 Blackf. 155, it was said: "We have no

doubt that words spoken or written, in the regular course of church discipline, to or of members of the church, have, as among the members themselves, very properly been held to be privileged communications, and not actionable unless express malice be shown in the speaker or publisher." But it was held in that case that "an accusation made by a member of a church, in the regular course of church discipline, against a person not a member, cannot, as to him, be considered as a privileged communication," and upon this point the case turned, the plaintiff not being a member of the church. We have examined the cases cited in the above-named case, and will refer to them briefly. *The King* v. *Hart*, 1 W. Bl. 386, was a case where it was held that the expulsion of the plaintiff, who was a quakeress, "for not practising the duty of self-denial," the reason being entered in the books of the meeting, and signed by the defendant, who was the clerk of the meeting, a copy of the entry having been delivered to her by the defendant at her request, being the only publication thereof, was not actionable without proof of express malice. In *Remington* v. *Congdon,* 2 Pick. 310, the same point was decided, but as the parties were not both members of the church, the accuser not being a member, it became a question whether he could justify himself on the ground that the communication was privileged. It was held that as the member had intimated a desire or willingness to have the matter investigated upon a written accusation, the party making such written accusation was entitled to the protection of the rule relating to privileged communications, and that he was not liable in the absence of express malice.

In *Jarvis* v. *Hatheway*, 3 Johns. 180, the words proved to have been spoken were, "you are guilty of forgery." Upon cross examination of the witness, it appeared that the words were spoken at a meeting of the parties, before the witnesses C. and D., the persons in whose presence and hearing the words were proved to have been spoken, who were two members of the same church to which the parties belonged,

and who were convened "for the express purpose of taking the second step of labor in church discipline, and were with the parties alone, and acting under the rules of the church, and in pursuance of the precept or rule contained in the 18th chapter of the Evangelist Matthew." The defendant called no witnesses. The court before which the case was tried left it to the jury to decide whether there was evidence that the words were spoken maliciously or with a defamatory intention. The Supreme Court said, SPENCER, J., delivering the opinion: "I am perfectly satisfied that the charge to the jury was not only correct, but that no other charge could have been legally given. It is manifest from the case that the words were uttered in the course of church discipline by the defendant to the plaintiff, who were both church members, and whether such discipline was proper or not is not a point for us to determine. Every sect of Christians are at liberty to adopt such proceedings for their regulation as they see fit, not inconsistent with law or injurious to the rights of others. In actions of slander it is of the essence of the action, that the words be spoken maliciously, and that, as a matter of fact, belongs to the jury to determine."

In *O'Donaghue* v. *M'Govern*, 23 Wend. 26, the plaintiff was a priest of the Roman Catholic Church, and the defendant, a member of the same church, had sent a written communication to the bishop of the diocese, in which he charged the priest with having collected money for the purpose of building a church, which money he put into his pocket, keeping no account of the contributions, etc., and concluding by saying, "this is the last we heard of our priest." It was held that the communication was, *prima facie*, a privileged one, that if made in good faith an action for slander would not lie against the party presenting it; but that if the representation was false or impertinent, made without probable cause or belief in its truth, the action would lie, and that the onus of proving its falsehood and malice was on the plaintiff. It was also held that a plea of privileged communication omitting to deny the falsehood and

malice of the charge, and not insisting upon probable cause, was bad.

In *Dial* v. *Holter*, 6 Ohio St. 228, the slanderous charge was that the plaintiff had wilfully, etc., plowed up and removed a corner-stone, that he had been guilty of falsehood, and had committed an assault and battery. The defendant, among other answers, pleaded that he and the plaintiff were members of the Methodist Episcopal Church, and that, without the malice imputed to him in the declaration, he did exhibit to the branch of said church of which they were members, according to the usages and discipline thereof, the several charges and specifications against the said Holter, for the purpose of bringing him to trial on said charges before a committee of said church, according to the usages and discipline thereof, and that afterward the same came on for trial before a committee of said church, and was then and there tried, and that this is the same matter charged against said Dial in said first count, etc.

The plaintiff replied to this, that the said Dial, for the purpose of harming, defaming, and injuring him, did wilfully and maliciously exhibit to the said church said charges and specifications in the plea mentioned, etc. With reference to the plea, and the replication thereto, the court uses this language: "The special plea to the first count of the declaration attempts to repel any malicious and slanderous intentions in making the publication. Both parties were members of a religious church, whose discipline authorizes and makes it the duty of those who fall out, or differ in their secular affairs, to come before the body of which they constitute a part, and have an investigation into and settlement of disputes between them. For this purpose, either may prefer his petition to the church, specifying the cause of complaint he has against his brother member. By this means the subject is brought officially to the notice of those charged with its adjudication. Having this clearly authorized right to thus appear in the character of a petitioner, and to ask for a hearing and decision, according to the rules which

Kleizer *et ux. v.* Symmes.

all of the members undertake to observe, he may pursue it, whenever necessary, against another member, subject to this restriction—he must not institute the proceeding maliciously. He cannot shield himself, under the cover of church privi-lege, from an intentional and wilful attack upon another's character, under pretence of inviting a religious inquiry into the charges he makes.    The declaration avers that the de-fendant charged the plaintiff with 'knowingly and mali-ciously removing the corner-stone.'  This the defendant, in his plea, says he did without malice, for the purpose of bringing the plaintiff to trial on the charge before a com-mittee of the church:  The plaintiff replies that the defend-ant wilfully and maliciously exhibited the charge to the church, for the purpose of harassing, injuring, and defaming him.   It thus becomes a question of fact for the jury to de-cide, whether the defendant in preferring the charge was governed by a sense of Christian duty and his obligations to the rules of the church, or whether those pure and com-mendable principles were disregarded by him, and an evil and malignant desire to degrade and injure his neighbor per-mitted to control his action.   This issue the parties them-selves made, and when settled by verdict, must be conclusive, unless the court should set the finding aside.   The jury found that the charge was maliciously made—that the de-fendant exceeded the privilege of a church member, and should be held for the injury committed while thus acting contrary to the object and spirit of the discipline.   It was not erroneous to allow the jury to pass upon the question thus made up by the parties.

"It is said, however, that the replication. does not deny probable cause on the part of the defendant to make the charge.   This was not necessary.   The replication was good without it.   If there was any necessity to aver or to nega-tive the existence of probable cause, on the part of the de-fendant, that necessity rested with the defendant.   It was incumbent on him to place a full and perfect defence upon the record.   Whatever defect, therefore, attaches to the

pleadings by the omission of those words, is chargeable to the plea. For if the principle before alluded to be correct, that such publication as that made by defendant is only privileged when made in strict compliance with the rules of the church and in good faith, without malice, it follows that the plaintiff was only bound to answer a general denial of malice, by a re-affirmance of it. Hence if the demurrer to the replication had been sustained, as it is claimed ought to have been done, the judgment of the court would have reached the plea, and set it aside for insufficiency. We think that the demurrer was correctly overruled."

In *Whitaker* v. *Carter*, 4 Ired. 461, it was held, that in an action for slander, in charging the plaintiff with perjury, it is competent for the defendant to show that the words were uttered before a tribunal of a religious society, of which the plaintiff and defendant were both members, for the purpose of disproving malice. But the decision of such tribunal is incompetent evidence.

. In *Farnsworth* v. *Storrs*, 5 Cush. 412, it was held that when a sentence of excommunication from the church was read by the pastor on Sunday, in the presence and hearing of the congregation, in which was recited that the offender had "clearly violated the seventh commandment," etc., this was held a privileged communication. It was further stated that Congregational churches, in that commonwealth, have authority, to which any member, by entering into the church covenant, submits, to deal with their members for immoral and scandalous conduct; and for that purpose to hear complaints, to take evidence, to decide, and upon conviction, to administer punishment by way of rebuke, censure, suspension, and excommunication; and all persons who participate in the exercise of this authority, whether by complaint, giving testimony, acting and voting, or pronouncing the result, orally or in writing, provided they act in good faith, and within the scope of the authority of the church, are protected.

Without the examination of other cases, we will simply

refer to the following other authorities: *Fairchild* v. *Adams*, 11 Cush. 549; *Shelton* v. *Nance*, 7 B. Mon. 128; *Holt* v. *Parsons*, 23 Texas, 9; *Bradley* v. *Heath*, 12 Pick. 163; *Smith* v. *Youmans*, 3 Hill S. C. 85; Townshend Slander & Libel, secs. 233 and 234.

The first paragraph of the answer in question alleges that the parties were both members of the church; that the words alleged to have been spoken were spoken in the regular course of church discipline, etc., to the session, in the progress of the investigation of the alleged rumors, without any malice whatever, and in good faith.

The words referred to in the second paragraph of the answer are alleged to have been spoken by the defendant to a member of the session, who had not been in attendance at the first meeting, in communicating to him what the charges were that were in circulation, and which were to be examined into, and in urging him to attend; all of which, it is alleged, was done by the direction of the session, without malice, in good faith, and in the discharge of the duties devolved upon the defendant by the position which he held.

That the investigation of the alleged misconduct was carried on without any written charges and specifications, is immaterial, as it seems to us, inasmuch as the rule of the church provides for an investigation of such a character, when the member is charged with a crime, not by an individual or individuals coming forward as accusers, but by general rumors. By the word "crime," as used in the rule in question, we think we are not to understand a violation of some criminal statute, but some act which is a violation of the moral law, and contrary to the duty of the party as a member of such church.

In our judgment, the words spoken, of which complaint is made, are shown, *prima facie*, to have been spoken justifiably. If the facts alleged in the special paragraphs of the answer are not true, it was competent for the plaintiff, by reply, to have controverted them by a denial, which would have made an issue of fact for trial by a jury. If, on such trial,

the speaking of the slanderous words was shown, and the facts alleged, to show that they were justifiably spoken, were not proved as alleged, the plaintiffs would have been entitled to a verdict.   The plaintiffs chose, however, to abide by the decision of the court upon the demurrer, without making an issue of fact upon the answers, and we are of the opinion that no error was committed in deciding the demurrers against them, and in rendering judgment for the defendant.

The judgment below is affirmed, with costs.

PETTIT. C. J.—When a pleading is founded on a written instrument, the original, or a copy thereof, must be filed with the pleading.   2 G. & H. 104, sec. 78.

These paragraphs of the answer do not in terms admit or deny the speaking of the words, but by our statute, that which is not denied in an answer, is taken as admitted.   2 G. & H. 100, sec. 74.

I hold, therefore, that these paragraphs admit the speaking of the words at the time and place charged in the complaint.   These answers claim that the words were spoken in the course of church discipline, and were, therefore, privileged; but the second paragraph shows that they were spoken to an individual member of the church, and not at a session of the ruling elders or of the judicatory.   The rule that is set out in each paragraph makes it the duty of the judicatory to investigate the charge of a crime when it has become public or notorious.   The charge was adultery, which is not a crime under the laws of this State, however immoral and wrong it may be; and, consequently, under that rule, the church had no right to investigate it on its own motion without complaint.

It is averred in both paragraphs that certain ruling elders constituted the session for the government of the church, but no rule to that effect is recited or made a part of these paragraphs.   It is also said that by the "rules and regulations for the government of the church, the pastor is mod-

erator and member of the said session, yet no rule to that effect is made a part of these answers.   In both paragraphs of the answer above copied, a rule is quoted by which when a member is charged with a crime by general rumor, the proper judicatory is bound to take immediate cognizance of the affair.   What is the proper judicatory?   On the face of the answers it appears that such a rule exists, but no such rule is made a part of these paragraphs.   There is no averment that the session or judicatory was properly called or organized, that charges were made, answers to them filed, and a finding of guilty or not guilty rendered, or any disposition of the subject.   We cannot take judicial notice of the rules, canons, or proceedings of a church; but to bring them before the court, they must be specially pleaded.

I hold these paragraphs of the answer were bad.

*O. S. Hamilton* and *L. Wallace,* for appellants.

*A. J. Boone* and *R. W. Harrison,* for appellee.