INDIANAPOLIS HORSE PATROL, INC., A CORP. ET AL. *v.* WARD.

[No. 30,930. Filed June 17, 1966. Rehearing
denied September 15, 1966.]

*Elmon Williams, John G. Tinder* and *Albert W. Ewbank,* of Indianapolis, for appellants.

*Leroy K. New,* of Indianapolis and *James Young,* of *Pogue and Young,* of Franklin, for appellee.

RAKESTRAW, C. J.—This case is here on transfer from the Appellate Court under the Acts of 1901, ch. 247, § 15, p. 565, being Burns' Ind. Stat. Anno. § 4-209 (1946 Repl.), because three judges of the Appellate Court are of the opinion that the judgment in the court below should be affirmed and three judges are of the opinion that the judgment below should be reversed. Two of the judges of the Appellate Court did not participate in the consideration of this case.

As stated by the appellee in his brief, this action is a suit for "conspiracy to defame." The appellee sued the Indianapolis Horse Patrol, Inc., a corporation and joined as parties-

defendant eight individuals who were members of the Board of Directors of said corporation. (There were 13 directors in all.) The appellee also joined as party-defendant one Cecil Byrne, who was not a director in said corporation, but was the designated official having general charge of the Shrine Circus.

The appellee's amended complaint is 12 pages in length and contains 35 rhetorical paragraphs. For our purposes, the relevant allegations of the complaint were generally that the plaintiff was a Shriner in the Murat Temple, that he belongs to the defendant Indianapolis Horse Patrol, Inc., which is a uniform unit affiliated with the Shrine, and that he also belongs to the Gatling Gun Club, another uniform affiliated unit. He charges that in the summer of 1958, he questioned the management and use of the proceeds of the Shrine Circus. That later he sold tickets for the Shrine Circus, and that credit for sale of such tickets could be credited to the various uniform affiliated units. He alleges that of the tickets he sold, he allocated a portion to be credited to the defendant Indianapolis Horse Patrol, Inc., and a portion to be credited to the Gatling Gun Club. He then alleges that certain directors of the defendant Indianapolis Horse Patrol, Inc. criticized him for making this allocation. He alleges that at a meeting on March 4, 1959, he was expelled as a member of the Indianapolis Horse Patrol, Inc. He further alleges that there was a second meeting on March 7, 1959, and that at that time a resolution was passed expelling him from membership for "actions unbecoming a member." At the latter meeting, certain statements are alleged to have been made by some of the defendants in the presence of the appellee. The complaint then alleges that all of these actions were taken pursuant to a "conspiracy to defame," that all of such actions were improper, and that as a result of the action of expulsion, the appellee lost considerable business.

The case was tried before a jury, and a verdict for $68,000 was rendered against all defendants. Judgment was entered on this verdict.

The evidence presented in the case was quite long and involved. For our purposes, it is sufficient to state that there was testimony that the appellee had certain conversations with the defendant Cecil Byrne concerning the disposition of the proceeds of the Shrine Circus in 1958. There was also testimony that he sold a large number of tickets to the Shrine Circus in 1959 and that he allocated a portion of his ticket sales to the Indianapolis Horse Patrol, Inc., and a portion to the Gatling Gun Club. The testimony is in dispute as to whether the allocation of ticket sales to various uniform units was authorized. As a result of appellee's allocation to the Gatling Gun Club, complaint was made by certain of the defendant-directors. They met on March 4, 1959, and at that time, without formal action, directed the treasurer to return to the appellee a check covering his membership charge and dues. Again on March 7, 1959, there was a meeting of all but one of the directors. Certain remarks were made in this meeting, and a resolution was adopted expelling the appellee as a member of the Horse Patrol if he should refuse to resign. When this was communicated to the appellee, he was told that if he did not resign expulsion would hurt him in his business and damage his reputation.

In determining this cause, it is fundamental that there is no cause of action for conspiracy as such. The cause of action is for damage resulting from a conspiracy. *Miller, etc.* v. *Ortman, etc., et al.* (1956), 235 Ind. 641, 136 N. E. 2d 17; *Grimm* v. *Baumgart* (1951), 121 Ind. App. 626, 96 N. E. 2d 915.

It is also fundamental, that a conspiracy is a combination of two or more persons, by concerted action, to *accomplish an unlawful purpose or* to accomplish some purpose, not itself unlawful, *by unlawful means. Holloway* v. *Thompson* (1942), 112 Ind. App. 229, 42 N. E. 2d 421; *Karges Furniture Co.* v. *Amalgamated, etc., Union* (1905), 165 Ind. 421, 75 N. E. 877; *Miller, etc.* v. *Ortman, etc., et al., supra.*

In this case, the theory of the plaintiff's complaint was that the conspiracy was a conspiracy to defame the plaintiff. If the complaint is to state a valid cause of action, it therefore follows that the conspiracy must have been a conspiracy to libel or slander the plaintiff. Otherwise the allegations of the plaintiff's complaint would be lacking in the unlawful purpose or unlawful means which are necessary to a conspiracy. And since defamation is the subject of the conspiracy charged, the law of libel and slander would be applicable.

On appeal, there are many specifications of error. The appellants strongly maintain that there is insufficient evidence to sustain the verdict of the jury and the judgment of the trial court. Taking all the evidence, there is grave question of the sufficiency. The judgment was against the Indianapolis Horse Patrol, Inc. and nine individual defendants. As to most of the individual defendants, the only evidence involving them is that they attended the directors' meeting, and voted for the expulsion of the plaintiff. It requires a considerable stretch of the imagination to infer that attending a meeting and voting alone implies a knowledge of and participation in a conspiracy which would involve the making of oral or written false statements. However, in view of our decision on the instructions tendered in this cause, it is not necessary for us to determine the sufficiency of the evidence.

An examination of both the allegations of the plaintiff's complaint and the evidence indicates that all matters which could be relied upon to constitute the defamation, which is the subject of the conspiracy charged, were in connection with the Shrine organization and the Indianapolis Horse Patrol, Inc. The allegations and the evidence involve the operation of the Shrine Circus and the meetings of the Board of Directors of the Indianapolis Horse Patrol, Inc. Under these circumstances, it is clear that a qualified privilege attaches to any statements and communications.

The rule is well stated in 18 I. L. E. Libel and Slander § 52, pp. 475-476, as follows:

"The rule concerning a qualified privilege is that a communication made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty, is privileged.

The fact that words otherwise actionable are spoken under a qualified privilege rebuts the inference of malice which would otherwise arise as a matter of law from the speaking of the words. However, the absence of malice is established only prima facie, and plaintiff may overcome this by proof of actual or express malice. . . ."

In 33 Am. Jur. Libel and Slander § 132, p. 131, the rule is stated as follows:

"It seems to be generally recognized that a qualified privilege attaches to statements and communications made in connection with the various activities of such organizations as lodges, societies, labor unions, etc. Thus, it is well settled that members of such bodies may report on the qualifications of applicants, prefer charges against fellow members, offer testimony in support of the charges, and make proper publication of any disciplinary action that may be taken, without liability for any resultant defamation, so long as they act without malice. A similar privilege attaches to such communications by executive officers as a letter advising members of a local branch that their collector was behind in his remittances and directing them thereafter to pay their dues to another; a statement made at a conference called to investigate a series of larcenies that although there was no positive proof, a certain member was under suspicion; and a news article charging that a financial officer had padded the membership roll to increase his fees, was short in his accounts, and had refused to make restitution. . . ."

It has also been held that,

"Where the complaint discloses that the occasion was qualifiedly privileged, plaintiff must prove not only that the language was false and malicious but that the defendant acted maliciously in publishing the language. Defendant may not be called on to prove that he did not act maliciously until some evidence of actual malice has been introduced by plaintiff.

"The facts showing an occasion of qualified privilege

could be proved by defendant under the general denial or general issue when such pleadings were recognized. . . ." 18 I. L. E. Libel and Slander, § 94, pp. 508-509.

The doctrine of qualified privilege has been recognized under the common law from the earliest cases. The following cases in Indiana have recognized the doctrine of qualified privilege, under varying circumstances. See *Henry* v. *Moberly* (1898), 23 Ind. App. 305, 51 N. E. 497; *Cadle* v. *McIntosh* (1912), 51 Ind. App. 365, 99 N. E. 779; *Kleizer* v. *Symmes* (1872), 40 Ind. 562.

At the trial, the defendants tendered seven different instructions dealing with the doctrine of qualified privilege. We do not deem it necessary to set forth all of the tendered instructions in this opinion. Suffice it to say that in the instructions, the rule concerning qualified privilege was well covered in line with the authorities above cited. None of the instructions given by the court defined for the jury the doctrine of qualified privilege or enunciated the requirement of proof of malice made necessary by the application of the doctrine.

The doctrine of qualified privilege was relied upon by the defendants in the case, and was applicable to the allegations contained in the complaint and the evidence presented. A party is entitled to have his theory of the case made by the pleadings, issues and evidence properly presented to the jury in the instructions. 28 I. L. E. Trial, § 182, p. 168; *Lawson et al* v. *Webster* (1962), 133 Ind. App. 296, 181 N. E. 2d 870; *Lavengood* v. *Lavengood* (1947), 225 Ind. 206, 73 N. E. 2d 685. It was therefore error for the trial court to refuse to instruct the jury on the doctrine of qualified privilege.

In his brief, the appellee claims first that the error, if any, has been waived because the defendants did not object to evidence of statements, and "if such actions were privileged, they were inadmissible as evidence." Here obviously the appellee is confusing the qualified privi-

lege which is a substantive doctrine of law with the concept of "privilege" as applied to certain testimony. The question to be ascertained here is not whether certain evidence was admissible, but whether certain evidence established a situation which would create a legal immunity.

The appellee also maintained that such tendered instructions invaded the province of the jury to "impliedly determine an issue of fact on which there is no evidence whatever." It is sufficient here to say that the instructions tendered were in terms of the rules of law concerning qualified privilege and, where mandatory, instructed the jury that they should find for the defendants unless actual malice, combined with other requirements, were found to exist. Such instructions did not invade the province of the jury, but only instructed the jury as to determinations which they were required to make.

The appellee also argues that the doctrine of qualified privilege is inapplicable to this case, because there is evidence from which actual malice could be implied. Conceding, without deciding, that there may be evidence from which malice could be implied, it is equally true that under the evidence the jury could have found that no actual malice existed. The jury was entitled to decide either that there was actual malice, or that there was not actual malice. The jury should have been instructed on the law concerning qualified privilege, so that if they found there was no actual malice, they could have applied this rule of law.

The judgment of the trial court is reversed and this cause is remanded with instructions to grant the defendants' motion for new trial.

Arterburn & Myers, JJ., concur. Jackson, J., concurs in result. Achor, J., not participating.

NOTE.—Reported in 217 N. E. 2d 626.