Wis.] JANUARY TERM, 1897. 445

Agnew vs. Farmers' Mutual Protective Fire Ins. Co.

AGNEW, Appellant, vs. FARMERS' MUTUAL PROTECTIVE FIRE INSURANCE COMPANY OF THE TOWNS OF MEDINA, YORK, SUN PRAIRIE & DEERFIELD, COUNTY OF DANE, STATE OF WISCONSIN, Respondent.

*February 23 — March 16, 1897.*

*Insurance: Evidence in action on policy: Instructions: Waiver.*

1. Where the defense to an action on a policy of fire insurance is that the plaintiff set the fire which consumed his property a wide range of circumstances may be given in evidence, tending to show the whereabouts of the plaintiff at the time of the fire, and what motives might have induced him to set the fire.

2. A mutual insurance company cannot be held to have waived the defense pleaded by it to an action on its policy, that the plaintiff therein set the fire which consumed its property, by the mere inadvertent act of its secretary in sending a notice of a general assessment to such plaintiff while the action was pending.

3. In an action where the evidence is circumstantial, its effect is to be determined by the jury, and it is not error for the court to refuse to instruct them that there is no evidence to establish a certain fact.

4. For the court to state in its charge in such action that the only issue for the jury is whether the plaintiff set or caused to be set the fire which consumed his buildings, and that all other matters claimed in the complaint stand admitted as true if the plaintiff is entitled to a recovery, cannot prejudice the plaintiff.

5. It was not error for the court to state in its charge what the defendant claims as to the plaintiff's motives in purchasing the insured property, and that " whether he was actuated by such motives is a disputed fact. He denies it. It is for you to determine whether such facts existed."

6. It was not error for the court to refuse to charge, as requested by plaintiff, that the defense must be established by a preponderance of the evidence *given in court,* where that point was fully covered by the general charge.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

The case is fully stated in the opinion.

For the appellant there was a brief by *G. W. & H. S. Bird*, and oral argument by *G. W. Bird*.  They contended, among other things, that there was error in the rulings of the court, both in admitting and in excluding evidence, for which the judgment should be reversed.  The defendant's counsel having in his closing argument, to which the plaintiff's counsel had no opportunity to reply, assumed and claimed that a certain fact was established, of which there was no proof, it was error for the court to refuse to charge, as requested by plaintiff, that there was no proof of that fact.  *Brown v. Swineford*, 44 Wis. 282, 290; *Elliott v. Espenhain*, 59 id. 272, 277; *Bremmer v. G. B., S. P. & N. R. Co.* 61 id. 114, 118; *Baker v. Madison*, 62 id. 137; *Hanawalt v. State*, 64 id. 84, 88; *Heddles v. C. & N. W. R. Co.* 74 id. 239, 251; *Carey v. C., M. & St. P. R. Co.* 61 id. 71, 76; *Hardy v. Milwaukee St. R. Co.* 89 id. 183; *Hall v. U. S.* 150 U. S. 76, 82; *Wilson v. U. S.* 149 id. 60; *State v. McCartney*, 65 Iowa, 522, 525. It was error to refuse the instruction that the verdict must be based upon the evidence *given in court*.  *Smith v. C., M. & St. P. R. Co.* 42 Wis. 520; *McCoy v. Milwaukee St. R. Co.* 82 id. 215.  The plaintiff had a right to a plain and direct instruction on that point.  *Sherman v. Menominee River L. Co.* 77 Wis. 14, 22; *Little v. Superior R. T. R. Co.* 88 id. 402, 408; *Johnson v. Superior R. T. R. Co.* 91 id. 233.  The defendant waived its defense based on a forfeiture of the policy by giving notice of an assessment.  *Stylow v. Wis. O. F. M. L. Ins. Co.* 69 Wis. 224; *Oshkosh Gas Light Co. v. Germania F. Ins. Co.* 71 id. 454; *Dohlantry v. Blue Mounds F. & L. Ins. Co.* 83 id. 181; *McKinney v. German M. F. Ins. Co.* 89 id. 653; *Dick v. Equitable F. & M. Ins. Co.* 92 id. 46.

For the respondent there was a brief by *R. M. La Follette* and *W. G. Coles*, and oral argument by *G. E. Roe*.

CASSODAY, C. J.  It appears from the record, in effect, that the defendant issued a fire insurance policy to one

G. W. Stiles, September 27, 1890, insuring him against loss
by fire of his dwelling house for $1,000, his farm barn for
$700, his grain, stock, etc., for $1,200, all situated on the
lands described, for a term of five years from September 27,
1890, to September 27, 1895, at noon; that June 1, 1893,
Stiles died intestate, leaving a widow, Catherine J., and two
children, Frank E. and Clara M.; that the widow and Frank
became administrators of the said estate, and settled the
same; that April 28, 1894, the plaintiff purchased and be-
came the owner in fee of the lands described by convey-
ances from said widow and the son and daughter, which
were recorded May 12, 1894; that at the time the plaintiff
became such owner the vendors agreed, as a part of the trans-
action, to assign to the plaintiff said policy of insurance, and
the same was so assigned accordingly, with the consent of
the defendant; that May 29, 1894, said buildings were de-
stroyed by fire; that thereupon the plaintiff complied with
all requirements of the policy, but the defendant refused to
pay the insurance; that September 27, 1894, the plaintiff
commenced this action to recover $1,729, the amount of the
loss, with interest. The answer admits, *seriatim*, all the
material allegations of the complaint, and then alleges as
an affirmative defense that the fire which destroyed the
property was wrongfully set, or caused to be set, by the
plaintiff, for the purpose of destroying the property and
enabling him to procure the insurance. At the close of the
trial the jury returned a verdict in favor of the defendant,
upon which judgment for $371.55 costs was entered, and
from which judgment the plaintiff brings this appeal.

It appears that the premises in question were eight or
nine miles north of the village of Marshall; that the plaint-
iff at the time was about thirty-one years of age, and lived
at his father's, about two miles west of Marshall; that the
plaintiff returned from Madison on the evening of May 29,
1894, and attended a concert at Marshall with the lady

whom he expected to marry on the evening of the next day; that the concert closed somewhere between 10 and 11 o'clock; that the fire was discovered, according to the testimony on the part of the plaintiff, shortly after 11 o'clock, and, according to the testimony on the part of the defendant, shortly after 12 o'clock. The plaintiff testified that after the concert was out, and his intended had started for her home, about four and one-half miles southeast of Marshall, in a buggy with her brother, he started to drive his horse and buggy to the premises in question, but that, after proceeding about half a mile, he found that he did not have the key to the Stiles house, and so he turned back, and drove to his father's house, and got into bed just as the clock struck 12, and remained there until 4 or 5 o'clock the next morning. The evidence is voluminous and circumstantial on the part of the defendant, but after careful consideration we think it is sufficient to sustain the verdict.

1. Numerous errors are assigned for the admission of testimony to the effect that a certain witness who had examined certain tracks of a team told other witnesses what he found in respect to such tracks; also in allowing the witness to testify why he and his companions got out of the buggy at particular places, and examined the tracks; also for allowing the defendant to cross-examine one of its witnesses when taken by surprise by his testimony; also in allowing Frank E. Stiles to testify as to the comparative value of the different parts of the farm; also in allowing a witness to testify as to what interest the plaintiff manifested in the examination of the tracks; also in allowing a witness who lived one block from the hall where the concert was held, and who had been in bed fifteen or twenty minutes before he heard the crowd coming from the concert, to state that, judging from the time he went to bed, he should think it was about 10 o'clock when the concert was out that evening; also in allowing a witness to testify as to what the plaintiff had offered

to take for the land, and particularly a certain forty, before and after the fire; also in not sustaining an objection to a question put to the plaintiff on cross-examination as to whether he had not stated to a person named, three or four days after the fire, that he could not have been at the premises at the time of the fire because he had driven three miles and a half south of Marshall that same night; also in not sustaining an objection to a question put to the plaintiff on cross-examination as to whether he called the attention of a certain witness to the fact that he could not find any tracks leading out of the barn yard while at the barn yard. Some of these circumstances, taken by themselves, would seem to be without any significance, but, when taken in connection with other facts and circumstances which the evidence tended to prove, they may have had more or less bearing upon some of the questions suggested, as to the time when the concert closed and the fire was first discovered, as to the whereabouts of the plaintiff between the time of the concert and the fire, as to the connection between the tracks discovered and those which may have been made by the plaintiff's agency, or as to the conduct, statements, and appearance of the plaintiff in respect to the tracks and the fire, and his motive for burning the property. The evidence in such a case must, necessarily, take a broad range. But reversible error must "affect the substantial rights of the adverse party," and we fail to find any such errors in the rulings thus made. R. S. sec. 2829.

2. The same may be said of the ten errors assigned for the rejection of testimony. As, for instance, one witness on the part of the defendant testified that when he discovered the fire he looked at the clock, and it was ten or fifteen minutes after 12; that the barn was then nearly burned down, all consumed but the posts and the frame; and that the house was on fire. We perceive no error in rejecting a question put to that witness on cross-examination, as to how

long, in his judgment, the fire had been burning when he first saw it, and also whether he had not stated to certain parties named that from what he saw he should judge the fire commenced about half past 11. Other testimony rejected was as to whether there were three single places for horses to stand in at *Agnew's* barn, to which the court said he had just answered that he would not call them stalls; also as to the time which elapsed after the witness left the plaintiff that night and when he went to bed; also as to whether a witness had any further conversation with another witness in June, 1894; also as to the condition of the buggies at *Agnew's* barn when the witness examined them; also as to what the witness then said as to the length of time which had elapsed, apparently, since the double buggy had been out; also as to whether, after examining the horses' feet at *Agnew's* barn, he stated that they did not correspond with the tracks; also as to where the plaintiff was living in May, 1894, which, according to the statement of the court, he had answered two or three times before; and also as to the conversation of one witness with another witness as to the time when the fire commenced, and as to having told still another witness. We cannot undertake to give reasons for each and all of such several rulings. It is enough to say that some of such exceptions are trivial, and each and all of such rulings may be fairly sustained upon well-established and familiar principles of law. The trial court necessarily has a wide discretion in such matters, and we perceive no abuse of such discretion.

3. There was no error in refusing to instruct the jury that there was no testimony showing or tending to show that the plaintiff had arranged with anybody to have a team waiting anywhere to go or take him to the Stiles farm to set or cause the fire to be set, and that they could not base their verdict on any such supposition or surmise. Such instruction called upon the court to determine the effect of the cir-

cumstantial evidence in the case, and to hold, as a matter of law, that there was no evidence tending to prove the fact stated.

4. There was no error in refusing to instruct the jury that their "verdict must be according to the weight of *the evidence given in court*," and that they could only find such a verdict as should be supported by the evidence. There is no pretense that there was any evidence except such as was given in court. The court charged the jury that the burden of establishing the defense rested upon the defendant, and that "it must be established by a fair preponderance of the evidence;" that unless "the evidence preponderates to establish" the defense, their verdict must be for the plaintiff. This necessarily refers to the evidence given in court on the trial, and hence covers the request. *Stilling v. Thorp*, 54 Wis. 536, 537.

5. There was no error in refusing to instruct the jury that "About October 21, 1895, defendant made and notified plaintiff of an assessment upon his policy for losses occurring since October 29, 1894. By so doing defendant waived and estopped itself from insisting upon the affirmative defense set up in its answer, and your verdict must be for the plaintiff for the full amount claimed." At the time mentioned in the request the suit had been pending for a long time, and was at issue. The notice of the assessment seems to have been inadvertently sent out by the defendant's secretary in making a general assessment, and we cannot hold that it took away and destroyed the defense which had long before been set up in the answer in the case. It is unlike the very numerous class of cases, some of which are cited by counsel for the plaintiff, where, after the forfeiture of the policy by reason of the breach of some condition therein, the company waives the forfeiture by insisting upon the enforcement of its provisions. The defense here is not based upon any condition contained in the policy, but upon

a fact existing outside of the policy, to the effect that the plaintiff intentionally burned his own buildings for the purpose of obtaining the insurance.

6. After stating in the charge that the only issue for the jury to determine was whether the plaintiff set fire or caused fire to be set to the buildings in question, the court further stated that "All other matters claimed in the complaint stand admitted as true, if the plaintiff is entitled to recovery." That statement contained nothing prejudicial to the plaintiff. On the contrary, it states just what he claims.

7. There was no error in charging the jury that "The defendant company claims in this case that the plaintiff was actuated by a motive of gain, in that he had purchased this property whereon these buildings were situated for the purpose of speculation, that is, for the purpose of making money by such purchase and the sale of it again, and that he determined that if he could collect the insurance on those buildings, and then sell the land, he would then gain by such transaction a considerable sum of money. Whether or not the plaintiff was actuated by any motive of that kind is a disputed fact. He denies it. It is for you to determine whether any such fact existed." This stated just what the defendant claimed. It further stated that whether the plaintiff was actuated by any such motive was a disputed fact; that he denied it; that it was for the jury to determine whether any such fact existed.

The claim that the verdict is not supported by the evidence has already been disposed of.

*By the Court.*— The judgment of the circuit court is affirmed.