## HENRY *v.* MOBERLY.

[No. 2,274. Filed Nov. 1, 1898. Rehearing denied Nov. 21, 1899.]

LIBEL.—*Privileged Communication.—Notice.—Complaint.—Evidence.*
—In an action for libel, based upon a privileged communication, the burden is upon plaintiff to allege and prove that the publication was malicious and without probable cause. *pp. 311, 313.*

LIBEL.—*Malice.*—*Evidence.*—*Privileged Communication.*—Where an action for libel is based upon a privileged communication, proof of the falsity of the charge made in the communication is not of itself sufficient to show malice. *p. 316.*

SAME.—*Privileged Communication.*—*Falsity of Charge.*—To entitle plaintiff to recover in an action for libel, based upon charges made in a privileged communication, it must be shown that the charges were false, and that defendant knew them to be false at the time he made them. *pp. 316-318.*

SAME.—*Damages.*—Where, in an action for libel, based upon a communication made by a school trustee to his associates protesting against the employment of plaintiff as teacher, it was shown that plaintiff was employed, notwithstanding such protest, and without any financial loss, and that the charges were not communicated to any other persons, she was not entitled to more than nominal damages. *p. 318.*

From the Clay Circuit Court. *Reversed.*

*W. R. Harrison, J. C. Robinson, G. A. Knight, Willis Hickam* and *J. A. McNutt,* for appellant.

*I. H. Fowler, L. U. Downey, J. R. East* and *Holliday & Byrd,* for appellee.

WILEY, J.—In June, 1889, appellant was a member of the board of school trustees of the town of Gosport, and was its treasurer, and had been for many years prior thereto. Appellee had been employed by said school trustees as a teacher in the public school of said town, and did teach therein during the school year of 1888 and 1889.

At a meeting of the board held on the 21st day of June, 1889, called specially to consider the application of appellee to be reëmployed for the next ensuing school year as a teacher, appellant, as a member of said board, filed a written protest against so employing appellee. The majority of said board refused to consider the objections therein urged to her employment, and did favorably consider appellee's application, and did contract with her to teach in said school for the next ensuing year. After such protest was filed, and appellee was reëmployed as indicated, appellant withdrew the protest filed by him, and locked it up in his safe until he was re-

quired by the court to produce it for inspection.  Appellant
did not publish or circulate said protest in any way other
than to submit it to said school trustees, and when it was
submitted no one was present but the three members of said
board.   It appears from the record that at a previous meet-
ing of said board, appellant stated his objections to the
reëmployment of appellee, which objections  were  stated
orally, and were essentially the same as those embraced in
the written protest filed June 21, '89, and, at the request
of the other two members of the said board, appellant re-
duced his objections to writing.

The "protest", as it is designated in the record, is quite
lengthy, but as only a certain part of it is relied upon as
libelous, we need not set it out in full in this opinion.   It
is headed as follows:  "Gosport, Ind., June 21, 1899.
George P. Lee, President, A. H. Wampler, Sec'y, Gosport
School Board.  Gentlemen:  I, James R. Henry, treasurer
of said school board, submit the following as my protest
against the employment of Mary Moberly as teacher in
Gosport school for the ensuing year."

In this protest the appellant stated seven different reasons
why he objected to the employment of appellee, the second
of which is as follows:  "(2) For claiming wages not due her,
and in making statements, which, in my opinion, she knew
to be false, in order to obtain them."

Upon this language in the protest appellee sued appellant
for libel, and charged in her complaint that said language
was uttered and published by filing it with said board, etc.
In the publication of these words the complaint avers that
they were false and libelous and without probable cause, and
in the language of the complaint "Thereby charging and
intending to charge that said plaintiff [appellee]  *  *  *
had wilfully and corruptly lied concerning the amount of
money due her, and that she was a liar."

The cause was put at issue by an answer admitting the
publication of the words charged, but averring that they

were true, and reply in general denial. In other words the answer was a justification. Appellant's motions for judgment in his favor on the special verdict, that the court render judgment in favor of appellee for nominal damages only; and for a new trial, were respectively overruled, and proper exceptions reserved.

The assignment of errors challenges these several rulings, also the overruling of appellant's demurrer to the complaint and the sufficiency of the complaint.

This is the second appeal in this case. See *Henry v. Moberly*, 6 Ind. App. 490. In the former appeal this court held that the communication or the "protest" sued upon was privileged. In the former appeal the judgment was reversed because of the insufficiency of the complaint. The complaint was then amended, and appellant again urges that it is still insufficient; but upon a careful examination of the opinion upon the former appeal, we think that the objections urged against the complaint are obviated by the amendments, and substantially conform to the rule announced therein. Hence the rule applies that the law as declared in the former appeal is the law of the case in a subsequent appeal. There was no error in overruling the demurrer to the amended complaint.

The other alleged errors may be considered together. Before further discussing the questions involved, we deem it proper to state in narrative form the material facts as shown by the special verdict. The jury found that appellee was a school teacher; that she had taught in the public schools of the town of Gosport for the two school years immediately preceding June 20, 1889; that she was duly licensed to teach the ensuing year; that the school board of said town was composed of George P. Lee, A. H. Wampler, and appellant; that Lee was president, Wampler secretary, and appellant treasurer of said board; that on the evening of June 20, 1889, a majority of said board voted to employ appellee as such teacher for the ensuing year; that

appellant voted for another person for the same position; that at said meeting appellant stated orally to said board his objections to the employment of appellee; that thereupon Wampler and Lee requested appellant to put his objections in writing and present the same at a subsequent meeting; that appellant agreed to do so, and a meeting of said board was called to meet at the residence of Wampler the following day at 1 o'clock p. m., to receive and consider the same; that said board did meet at the time and place designated, in the parlor of the residence of said Wampler; that at said meeting there were no persons present but the members of said board; that when said meeting was called to order, appellant presented his objections in writing; that one of the members read the same to the other members of said board; that the second specification of said protest was as follows: "For claiming wages not due her, and making statements she knew to be false, in order to obtain them"; that by the use of such words appellant intended to charge that appellee wilfully and corruptly lied; that he thus intended to charge that appellant was a liar; that said language so written and published was to gratify a feeling of personal ill-will and revenge entertained by appellant toward appellee; that he wrote and published said language with a corrupt motive to injure the good name of appellee; that he did so in bad faith; that he knew it was untrue; that the words were written and published maliciously to injure the appellee; that the said language was without probable cause; that appellant did not ask or claim of said board more money than was due to her; that at the end of the school year 1888-9, there was due her $85, which appellant paid to her on or about May 20, 1889; that for teaching in said school, she was to receive $35 per month; that the language sued on, and contained in the statement filed with said board, was written by appellant for the purpose of reading to Lee and Wampler, as members of said board; that June 21, 1889, had been fixed for finally hearing and determining appellee's application to teach in

the Gosport schools; that said meeting was called for the express purpose of enabling the appellant to file a written statement of his reasons and objections against the further employment of appellee, and for the purpose of considering the objections by appellant; that the only publication of said objections by appellant was made to said Lee and Wampler, while said school board was in session considering said application; that the sole purpose of appellant in preparing and publishing the language sued on was to make known to the other members of said board his objections to the fitness of appellee so to teach and to prevent her further employment; that said "protest" was prepared by appellant as a member of said school board, and by him delivered to Lee and Wampler, the other two members of the board, while said board was convened, as his protest against the further employment of appellee as a teacher in said school; that the three members of said board were the only persons who saw or heard said instrument when it was so read and published; that before said meeting at which said protest was read, Lee and Wampler had been fully informed as to the contents of the charge sued on; that as soon as said "protest" was so read and published, the said Lee and Wampler at once decided that said charge did not contain anything that affected the character or fitness of appellee to teach in said schools, and did then and there employ her to teach for the ensuing year; that they placed her in said school at the beginning of the following school year; that the language complained of was written and published in reference to the matter of appellee's knowledge, and the claims made by her in reference to the amount of wages claimed by her to be due her at the time of her settlement with appellant as treasurer, at the end of the school year of 1888-9; that immediately after said protest had been published as aforesaid, appellant took the same into his possession, locked it up in a safe in his bank, where it remained until after this action was commenced, when it was produced by order of

court, and no other person or persons ever saw it; that when appellee made her final settlement with appellant for her salary on or about May 20, 1889, she did not claim or assert that she was to receive more than $35 per month; and that the instrument containing the language sued on was prepared and published at the request of Lee and Wampler, as members of said board.

It is proper to say here that the complaint does not state any facts that would entitle appellee to special damages, and hence her right to recover must rest upon the general averments of her complaint, and the facts found by the jury, if such facts are within the issues and shown by the evidence.

The language which appellee has made the basis of her action is not libelous *per se*, and only becomes so by reason of the innuendo charged. It having been held in the former appeal, and we think correctly so, that the occasion upon which the language was published was one of qualified privilege, it follows, under the great weight of authorities, that it was necessary for appellee to allege and prove that the publication was malicious and without probable cause, to entitle her to recover. Upon this proposition we cite, without quoting, the case of *Henry* v. *Moberly*, 6 Ind. App. 490, where in an exhaustive opinion many authorities are collected, and the subject ably discussed. To better understand the merits of the controversy here presented, we deem it necessary to state some facts disclosed by the evidence which do not clearly appear from the special verdict.

The language used in the protest, which appellee has singled out as her cause of action, as claimed by appellant, had its origin in an alleged conversation between appellant and appellee at the former's bank, when she called on him for a final settlement of her salary at the close of the school year 1888-9. Appellant testified that appellee came to his bank to have a settlement; that he looked over her account and told her there was $85 due her; that she emphatically said "that is not right;" that he said to her that he thought

he had kept the books right; that he got her former receipts and figured the amount she had already received and showed her that it was $195; that he put down $35 and multiplied it by eight; that she then said "$35 is not right; I am entitled to have more than $35. I am to have as much as the other teachers;" that he then said to her that she had been employed for $35 per month and that that was all he was authorized to pay her; that if she was to get any more she would have to see the other trustees, and if they would allow her more, he would pay it; that she said she would go to see the other trustees, and he told her that was all right. He further testified that he asked her if she would take the $85 then or wait till she saw the other trustees, and that she said "no I will take it now." He also testified that at the time she was angry and excited and as she went out she said it was not right. As to this part of appellant's evidence he was corroborated in every material fact by another witness who heard the conversation between appellant and appellee, and saw her conduct and actions.

Appellee was a witness in her own behalf, and was asked this question: "Now, Miss Moberly, will you tell this jury what you said and what Mr. Henry said to you at that time?" To which she answered: "I went in to draw my money. I said I came down to draw my money. He got the books and came out, and I said how much is coming to me? He figured there a little while, and he said there was $85 due me. After he figured there a short time, I said to him, how much are you giving me anyway, and he said $35. Then I said why is it that you can't give me as much as the other teachers. I didn't tell him I wanted more, or any thing of the kind, I just said why is it that you haven't given me as much as the other teachers."

We do not set out this evidence for the purpose of criticising the jury in its findings in regard to what did actually take place, or what was said between appellant and appellee, but to show the ground of the charge of which she com-

Henry v. Moberly.

plains, that appellant accused her of claiming more than was due her and making statements which she knew to be false to obtain it. We might properly say here, that all the other teachers were receiving larger salaries than appellee, which she knew, and that she was to receive $35 per month, and no more, which fact she knew when she made her final settlement with appellant.

Recurring again to the question of the language sued on as being privileged, we desire to submit some additional observations and cite some authorities bearing upon it. The general rule prevails that where a publication is libelous *per se*, malice is presumed, and proof of it is not necessary to entitle plaintiff to recover. *Sharpe* v. *Larson*, 67 Minn. 428, 70 N. W. 554; *Nolte* v. *Herter*, 65 Ill. App. 430; *Owen* v. *Dewey*, 107 Mich. 67, 65 N. W. 8; *Youmans* v. *Paine*, 86 Hun, 479; *Dixon* v. *Allen*, 69 Cal. 527; *Thompson* v. *Powning*, 15 Nev. 195; *Gaul* v. *Fleming*, 10 Ind. 253; *Hudson* v. *Garner*, 22 Mo. 423; *Mousler* v. *Harding*, 33 Ind. 176; *Byrket* v. *Monohon*, 7 Blackf. 83, 41 Am. Dec. 212; *Mitchell* v. *Milholland*, 106 Ill. 175; *Simmons* v. *Holster*, 13 Minn. 249.

But when the publication is not libelous *per se*, the burden shifts, and the plaintiff must prove malice. In such case there is no presumption of malice, and a recovery can not be had unless malice is proved. And especially is this rule applicable where the publication is privileged. This is the rule, and so held both in England and in this country by an unbroken line of authorities. In a recent case in England it was held that in an action for libel, if the libel was published on a privileged occasion, there must be proof of actual malice, and in the absence of such proof, the defendant was entitled to judgment. *Nevill* v. *Insurance Co.*, 2 Q. B. (1895) 156, 14 Reports Q. B. App. 587.

In Maine it was held that where the matter complained of is privileged, the burden of proving malice was upon the plaintiff, and that the defendant cannot be called upon to

show that he was not actuated by malice, until some evidence of malice towards the plaintiff, more than a mere scintilla, has been adduced by the plaintiff. *Bearce* v. *Bass*, 88 Me. 521.

In New York it was held that a publication being privileged, the plaintiff has the burden of proving malice. *Youmans* v. *Paine*, 86 Hun, 479.

And in an action for slander, where the rule is the same, where the words spoken were presumptively privileged, the burden is upon the plaintiff to prove that they were maliciously spoken. See, also, *Green* v. *Meyer*, 44 N. Y. Supp. 81; *Henry* v. *Moberly*, 6 Ind. App. 490.

The jury did find that the publication by appellant of the language complained of was malicious, and if we were to be guided and controlled by such finding regardless of evidence, it would be the end of the controversy upon this question. We have, however, examined with minuteness and care every word of the evidence, and fail to find a single fact or item of evidence which in the remotest degree shows malice on the part of appellant. The evidence of both appellant and appellee shows that prior to the alleged libel they were on friendly terms; that there had never been any trouble between them; that when appellant, as a member of the school board, visited the school, he visited the room and grade over which appellee had control; that when they met each other they exchanged the common courtesies of such occasions. There is not a word of evidence in the record showing that appellant had previously said or written anything derogatory to the good name and fame of appellee. As we have already said, the publication of the language relied upon was not libelous *per se*, and as the publication was privileged, there was no inference or presumption of malice, but the appellee was bound to prove it to sustain her right of action.

While it is true that the jury found that malice existed, yet there was no evidence from which such fact could pos-

sibly have been found, and we must conclude that it was found from mere inference or presumption. This being true the verdict cannot stand.

In a well considered case in Kansas, where the complaint alleged that the defendant published a false and malicious libel concerning the plaintiff, setting out the publication complained of, from which it appeared to be *prima facie* privileged, as a report to a Grand Lodge of Odd Fellows justifying a subordinate lodge in expelling a member for perjury, it was held that the burden of proof upon the trial as to whether the defendant was actuated by malice was upon the plaintiff, and that if the plaintiff gave no evidence of express malice, under the allegations of the complaint the defendant was entitled to a verdict. *Kirkpatrick* v. *Eagle Lodge*, 26 Kan. 384. See, also, *Marks* v. *Baker*, 28 Minn. 162; *Lathrop* v. *Hyde*, 25 Wend. (N. Y.), 448; *Fowles* v. *Bowen*, 30 N. Y. 20.

In Ohio it was held that even a citizen not only had the right, but that it is his duty as a citizen to communicate to the appointing power whatever he knows for good or ill concerning one who is an applicant for a teacher; and that when such communication is made in good faith, the citizen is protected, even though the statements contained in the communication be not true. *Nolan* v. *Kane*, 13 Ohio C. Ct. 485.

How much more forcibly the rule should apply if the communication is made by a member of the appointing power to associate members thereof, and especially when such communication is made at the request of such associate members. Here we have a member of a school board, having, as we must presume, the good of the schools in view, protesting to his associate members of the board against the employment of a teacher, giving his reasons in writing why he objects to her further employment, and the only publication of his protest was the reading of it on a privileged occasion at a special meeting of the board called for that pur-

pose, with no one present but the members of the board. There is not a word of evidence, or a circumstance disclosed by the entire record, that appellant acted with malice, nor is there anything to show that he did not act in good faith.

In the case before us the jury found that the charge made by appellant was false. This finding was made upon the uncorroborated evidence of the appellee as against the evidence of appellant corroborated by the evidence of a disinterested witness. The jury being the exclusive judges of the evidence and credibility of the witnesses, both the trial and this court are bound by their finding. But to prove malice, the *onus* being on plaintiff, she would be bound to prove not only the falsity of the charge, but to go further and prove that the qualified privileged communication was maliciously published. While proof of the falsity of the charge may be considered as tending to prove malice, yet the unbroken line of authorities hold that such evidence is not in itself sufficient for that purpose.

What we consider a leading case upon this question is *Laing* v. *Nelson*, 40 Neb. 252, 58 N. W. 846, where many authorities are collected and reviewed, and the subject is carefully and ably considered. With one quotation from that case, we dismiss the subject without further comment. The court said: "Upon a review of the decisions we think the proper rule to be that, while the plaintiff might rely upon the presumption of the falsity of the charges made against him, he is not required to do so, but may introduce affirmative evidence of such falsity in cases where malice must be expressly shown, as a step in the proof of malice; but that the falsity of the charge is not in itself sufficient to establish malice, and only becomes sufficient when coupled with evidence tending to show that the plaintiff made the charges knowing them to be false, or with other evidence tending to show malice."

We next remark, that there is no finding by the jury that the appellant knew at the time he made the charges

Henry *v.* Moberly.

that they were false, and this, under the authorities, is essential.

The verdict being silent upon this important fact is equivalent to a finding upon the question favorable to the appellant. We need not cite authorities in support of a proposition so familiar, and one which has so often been decided by the Supreme and this Court.

The damages claimed by appellee for the alleged libel is for the injury she sustained to her reputation by its publication to two members of the school board, by the appellant, who was their associate in office. They were all engaged in the same public service. It is not claimed that any one else ever heard of the charge after its publication at said meeting, through appellant, and its publication thereafter, if at all, by any person other than appellant, could not make appellant liable. It is not even claimed that its publication resulted in loss of employment or any financial loss. There is no finding by the jury that she sustained any financial loss.

It abundantly appears that Lee and Wampler both requested appellant to reduce his charge to writing for the purpose of having it published to them in their official capacity, and not in their individual capacity, and that it was to be published to them the following day at a special meeting of the school board for that express purpose. This publication was made at a time while the board was further considering appellee's application for employment.

The jury found that appellant filed the protest for the sole and only purpose of preventing appellee's further employment, and that notwithstanding the protest, the other two members of the board, after reading the same, decided in appellee's favor, on the ground that in their judgment the "protest" contained nothing which affected appellee's character or fitness to teach the school. Both the evidence and the verdict show that Lee and Wampler knew every fact stated in the protest, long before it was presented to them

in writing, and therefore it did not convey to them any new or additional information.

Looking to the evidence, we find that, as soon as it was read, "Lee remarked that he saw nothing in that protest to change his mind, and Mr. Wampler sanctioned him by saying that that was his view of it exactly, and they said Miss Moberly would remain in the school."

It looks to us that if her character or fitness as a teacher were not injured or affected in the minds of Lee and Wampler, the only persons to whom the protest was addressed, or in whose presence it was published, she was not injured in her reputation or character. The attempt of the appellant to prevent the further employment of appellee was futile, and the finding of the jury that his sole object was to prevent such employment, and that she was immediately employed, controvert the idea that she was thereby injured. In fact the jury affirmatively find that she did not suffer injury by finding that she was reëmployed. By the publication of the language charged, appellee could not have been brought into public scorn, contempt, or ridicule, because the alleged libel was not given to the public, nor could her reputation have been injured thereby under the facts as found in this case.

This being a privileged communication, appellee was not entitled to recover damages for wounded feelings, distress of mind, humiliation, etc.

Taking the verdict as a whole, it is not sufficient to support a judgment for appellee for more than nominal damages at least, because there is no finding that she was injured by the publication, while it affirmatively appears that she was not injured. We feel, however, that the ends of justice will be best subserved by a new trial.

Judgment reversed, with instructions to the court below to grant a new trial. Comstock and Robinson, JJ., concur in the conclusion. Black, J., dissents.