**Frank KING, M.D., for and on Behalf of Himself and all Other Similarly Situate Doctors at the Bartholomew County Hospital, Appellant (Plaintiff Below),**

**v.**

**BARTHOLOMEW COUNTY HOSPITAL, Appellee (Defendant Below).**

**No. 1-984A218.**

Court of Appeals of Indiana, First District.

April 15, 1985.

Rehearing Denied May 23, 1985.

Patrick W. Harrison, Cline, King, Beck, Harrison & Runnels, Columbus, for appellant.

Cynthia A. Boll, Jones & Patterson, Columbus, for appellee.

ROBERTSON, Judge.

Dr. Frank King (King) appeals the summary judgment entered in favor of Bartholomew County Hospital (BCH), the effect of which denied his request for a permanent injunction.

We affirm.

In particular, King sued on his own behalf and on behalf of all other physicians applying for medical staff privileges at BCH, to enjoin the hospital from requiring the applicants to execute a grant of absolute immunity and a release of liability to the hospital, its representatives, and any third party with respect to any and all civil liability which might arise from any acts, communications, reports, recommendations, or disclosures involving an applicant or appointee, performed, made, requested, or received by the hospital and its representatives to, from, or by any third party including other members of the medical staff concerning but not limited to certain specified activities implemented in the hospital credentialing process.

Each year, any physician intent on practicing at BCH, regardless of whether he is an incumbent staff member or new applicant, must submit his application for the upcoming year's staff membership. King was first appointed to the medical staff of BCH in 1980 and then again in 1981 and 1982 for successive one-year terms. However, in 1983, King refused to sign the application for the upcoming year because the revised form required execution of the grant of absolute immunity and release of liability clauses. Instead, he filed his complaint for a permanent injunction and a temporary restraining order. Subsequently, both parties submitted their respective Motions for Summary Judgment accompanied by affidavits. Following hearing on the motions, judgment was entered for BCH. King's subsequent, timely appeal focuses upon whether or not there existed a genuine issue as to a material fact and whether BCH was entitled to judgment as a matter of law.

We find no genuine issue as to a material fact exists for the reason that the facts are not in dispute. King initially applied for staff membership at BCH in May, 1980. The application form in existence at that time contained a provision whereby the applicant agreed to abide by BCH's by-laws, rules, regulations as may be enacted from time to time. Although not specifically set forth in the 1980 application form, the grant of absolute immunity and release of liability clauses of which the doctor now complains, were a part of the hospital's by-laws in effect at that time and thus, incorporated by reference. In King's letter of acceptance to the hospital's medical staff in 1980, he again agreed to abide by the hospital's by-laws, rules and regulations in force during the term of his appointment. The record shows that for each year when King accepted another one-year term on the hospital's medical staff, he signed similar statements whereby he acknowledged the by-laws and agreed to abide by them. In 1983, the hospital's Credential's Committee approved a new application form which set out in detail the absolute immunity and release of liability provisions contained in the by-laws. King refused to complete the form and instead sought judicial process to enjoin the hospital from requiring an applicant to execute these provisions as prerequisite to staff membership.

No genuine issue as to a material fact is present in the record. Our next and final step then, is to determine whether the hospital was entitled to judgment as a matter of law. IND.CODE 34-4-12.6-3 provides immunity from civil liability to any persons or organizations, including peer review committees, who, in good faith, furnish records, information or assistance to a peer review committee, in regard to evaluation of qualifications of professional health care providers, or of patient care. Further, the

personnel of a peer review committee shall be immune from any civil action arising from any determinations made in good faith in regard to evaluation of patient care. IND.CODE 34–4–12.6–3(d) specifically provides that no restraining order or injunction shall be issued against a peer review committee to interfere with the proper functions of the committee acting in good faith in regard to evaluation of patient care. A peer review committee is that committee which has the responsibility of evaluation of the qualifications of professional health care providers, (including licensed physicians) or of patient care rendered by professional health care providers. *See,* IND.CODE 34–4–12.6–1(c).

Further, county hospital legislation provides that the board, as the supreme authority in the hospital, shall have the power to determine appointments to the medical staff in accordance with IND.CODE 16–10–1–6.5 and IND.CODE 16–12.1–5–1 and the medical staff by-laws and rules approved by it. The governing board of the hospital is the hospital's supreme authority responsible for the management, operation, functioning and control of the hospital, including the appointment of the members of the medical staff and the assignment of privileges to members of the medical staff with the advice and recommendations of the medical staff. *See,* I.C. 16–10–1–6.5. Specifically the statute provides:

> ... The medical staff of a hospital shall be an organized group which shall be responsible to the governing board for the clinical and scientific work of the hospital, advice regarding professional matter and policies to the governing board, and shall have the responsibility of reviewing the professional practices in the hospital for the purpose of reducing morbidity and mortality, and for the improvement of the care of patients in the hospital. This review shall include, but shall not be limited to, the quality and necessity of the care provided patients and the preventability of complications and death occurring in the hospital. *The members of any medical staff committee organized for the purpose of conducting medical review, being retrospective and not a part of current patient care, shall have an absolute immunity from civil liability for communications made in committee meetings, and reports and recommendations made by the committee arising from deliberations by the committee to the governing board of the hospital or another duly authorized medical staff committee.* (Emphasis added).

Finally, I.C. 16–12.1–5.1 provides that all physicians possessing an unlimited license to practice medicine and surgery are eligible for membership on the medical staff, subject, however to the power of the board to establish and enforce reasonable standards and rules concerning the qualifications for admission to the medical staff and to practice in the hospital and reasonable rules for retention of such membership and for the granting of medical staff privileges within the hospital. The statute specifically provides that:

> (b) Such reasonable standards and rules may not discriminate against practitioners of any school of medicine who hold an unlimited license but may, in the interest of good patient care, and without limiting the generality of the foregoing, consider the applicant's post graduate medical education, training, and experience and any other facts concerning the applicant which may reasonably be expected to affect his professional competence.

I.C. 16–12–.1–5–1(c) provides that the medical staff shall originate by-laws and rules for self-government which shall be subject to the approval of the board.

█ Pursuant to its by-laws, the hospital's yearly reevaluation of medical staff applicants, whether new or incumbent, provides a reasonable, systematic, and objective method geared at ensuring good patient care. BCH argues and we agree, that it is conceivable that a physician's level of competency although adequate by yesterday's standards, may not be abreast of today's every-changing technology and

medical advancements. When cast against this reality, yearly reevaluation of medical staff applicants is not unreasonable. The documents on file, together with BCH's affidavit demonstrate the immunity granted those aiding in the re-evaluation process is intended to be a justifiable means in providing a complete, candid, up-to-date professional history of the applicants. King fails to demonstrate otherwise. When read together, the statutes cited fully support such endeavors and King fails to move us otherwise.

In reviewing a motion for summary judgment, the appellate court applies the same standard as that employed by the trial courts: summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and testimony, if any, show that there was no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Pike County v. State ex rel Hardin,* (1984) Ind.App., 469 N.E.2d 1188: Ind.Rules of Procedure, Trial Rule 56(C).

Accordingly, judgment is affirmed.

NEAL, J., concurs.

RATLIFF, P.J., concurs with separate opinion.

RATLIFF, Presiding Judge, concurring.

To the physician, denial of hospital privileges, in many cases, is tantamount to denial of the opportunity to practice a chosen profession. This is particularly true in the case of the one hospital community. *Kiracofe v. Reid Memorial Hospital* (1984), Ind.App., 461 N.E.2d 1134, 1142 (concurring opinion of Ratliff, J.). Consequently, that opportunity to practice such profession in the hospital should not be denied arbitrarily, capriciously, or unreasonably.

On the other hand, both the hospital and the public have a vital interest in maintaining high standards of medical care. Therefore, the hospital must have the opportunity to obtain information concerning the physicians to whom it is considering granting or renewing hospital privileges in order to fulfill its obligation to the public. To this end, there must be a free exchange of information, in good faith sought and given, to aid in discharging this ominous responsibility.

Here, the hospital required a physician seeking either initial admission or renewal of privileges to execute the release and grant of immunity which it deemed necessary in order to obtain needed information. The majority opinion points out statutes pertaining to peer review committees which afford such immunity. Indeed, the hospital's bylaws, both with which all physicians applying for staff privileges agree to abide, contain similar immunity provisions. Further, the application for reappointment to the hospital staff contains a similar grant of immunity.

Indeed, the hospital governing authority, its credentials committee, and persons furnishing information in regard to an applicant may well be clothed with a qualified privilege. A communication made in good faith on any subject matter in which the party making the communication has an interest or in reference to which such party has a duty, public or private, and either legal, moral, or social, if made to a person having a corresponding interest or duty is subject to a qualified privilege. *Lawson v. Howmet Aluminum Corp.* (1983), Ind. App., 449 N.E.2d 1172; *Weenig v. Wood* (1976), 169 Ind.App. 413, 349 N.E.2d 235, *trans. denied.* In *Lawson* the privilege was held applicable to communications between a plant supervisor and plant manager relative to termination of an employee. Likewise, Indiana courts have held a qualified privilege exists as to communications made to a school board by a board member concerning dismissal of a teacher. *Henry v. Moberly* (1898), 23 Ind.App. 305, 51 N.E. 497. *See also Lieberman v. Gant* (D.C. Conn.1979), 474 F.Supp. 848, *aff'd* 630 F.2d 60 (2d Cir.1980) (qualified privilege extends to university faculty members and officers for statements made in good faith as to skills of teacher and made in course of tenure proceeding). *Manguso v. Oceanside Unified School District* (1984), 153 Cal.App.3d 574, 200 Cal.Rptr. 535 (letter

containing alleged defamation written by school superintendent, regarding qualifications of a particular teacher and directed to prospective employers of that teacher, subject to qualified privilege). Statements made by a medical committee to a hospital with regard to physicians have been held clothed with qualified privilege. *Spencer v. Community Hospital of Evanston* (1980), 87 Ill.App.3d 214, 42 Ill.Dec. 272, 408 N.E.2d 981. Likewise, a letter from the director of nurses at a hospital to a nurses' registry concerning a certain nurse was deemed privileged in *Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App.2d 365, 150 N.E.2d 202, where the court stated that the essential elements of a qualified privilege are good faith, an interest or duty to be upheld, a statement limited in its scope to that purpose, a proper occasion, and publication in a proper manner and to proper parties only.[1] 150 N.E.2d at 207. Again, in *Heying v. Simonaitis* (1984), 126 Ill.App.3d 157, 81 Ill.Dec. 335, 466 N.E.2d 1137, testimony of physicians before a nurses' review committee concerning a particular nurse's qualifications was held protected by a qualified privilege.

It seems to me that the release and grant of immunity must be within the context of a good faith request for information, and a good faith communication thereof. Such would be consistent with the qualified privilege granted in such cases. To hold that a hospital may require a physician-applicant to grant absolute immunity to the hospital, its representatives, and any third party, and to release them from any and all liability which might arise from any such acts, communications, reports, disclosures, or recommendations without regard to whether such are made or given in good faith goes far beyond any legitimate privilege. Requiring a release and grant of immunity as a condition of applying for hospital privileges which is so broad as conceivably to include within its protection acts, statements, communications, or recommendations motivated by ill will, or done maliciously or capriciously, is unconscionable. In order to avoid unconscionability, the requirement of acting in good faith must be read into the release and grant of immunity. In fact, Article C of the application for reappointment releases the hospital, its representatives, and third parties for "statements made, materials provided or acts performed *in good faith* in evaluating me ... [Emphasis added.]" Record at 11. Section 4 of Article VI, Part C of the Medical Staff bylaws in subsection (c) provides that "[t]he applicant or member grants immunity to any and all hospitals, health care facilities, individuals, institutions, organizations and their representatives who *in good faith* supply oral or written information ... [Emphasis added.]" Record at 20, pp. 43 of exhibit.

With the limitation that the release and grant of immunity, in order to escape being invalid for unconscionability, must be read to grant immunity and release from liability only to those communications in good faith requested and given, I concur in the decision in this case.

1. The protection of a qualified privilege may be lost if the plaintiff shows that the speaker was primarily motivated by ill will, or if the privilege was abused by excessive publication of the defamatory statement, or if the statement was made without belief or grounds for belief in its truth (lack of good faith). *Lawson v. Howmet Aluminum Corp.* (1983), Ind.App., 449 N.E.2d 1172.