Christopher **HUFFMAN** and Patrick **Huffman, Appellants**
(Plaintiffs Below),

v.

**MONROE COUNTY COMMUNITY SCHOOL CORPORATION,**
Appellee (Defendant Below).

No. **60A01–9010–CV–410.**

Court of Appeals of Indiana,
First District.

Jan. 14, 1991.

Jay D. Allen, Allen, Allen & Allen, Salem, for appellants.

Gary J. Clendening, J. Suzette Vandivier, Harrell, Clendening & Coyne, Bloomington, for appellee.

ROBERTSON, Judge.

Christopher and Patrick Huffman appeal the trial court's granting of summary judgment in favor of the Monroe County Community School Corporation [MCCSC] in the Huffmans' lawsuit to recover for personal injuries suffered by Christopher at a track meet which took place at Bloomington North High School, a MCCSC facility. We affirm.

## FACTS

The facts in the light most favorable to the Huffmans reveal that on May 27, 1986, Christopher Huffman, a student from Salem High School, was participating in a regional high school track meet which took place at the Bloomington North High School in Monroe County, Indiana. The Tell City High School track team also participated in the track meet.

During warm ups, a student from Tell City High School threw a shot put which struck Christopher in the back of the head knocking him unconscious and dislocating his shoulder. Christopher suffered a severe laceration to the head which left a scar and tenderness. Christopher's shoulder was fractured and required surgery. The shoulder is permanently impaired and will require additional surgery.

Bloomington North High School is a part of the Monroe County Community School Corporation [MCCSC]. Tell City High School is a part of the Tell City–Troy Township School Corporation [TCTTSC]. The track meet was sponsored by the Indiana High School Athletic Association, Inc. [IHSAA]. MCCSC and TCTTSC are governmental entities and IHSAA is a private not-for-profit corporation.

Christopher and his father, who was responsible for Christopher's medical bills, brought suit against MCCSC, TCTTSC, and IHSAA alleging damages in the amount of $250,000.00. The Huffmans entered into a covenant not-to-sue with TCTTSC and TCTTSC was dismissed from the suit on February 14, 1989. The briefs do not indicate whether the Huffmans were compensated by TCTTSC for executing the covenant not-to-sue. The Huffmans executed a general release in favor of IHSAA in exchange for $5,000.00. As a result, IHSAA was dismissed from the suit on January 17, 1990.

The remaining Defendant, MCCSC, filed a Motion For Summary Judgment arguing

that the Huffmans' release of IHSAA served to release them from liability as an operation of law under the "Release Rule." The trial court granted the motion and the Huffmans brought this appeal.

## DECISION

■ The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18. When we review a motion for summary judgment, we apply the same standard as that employed by the trial court. *King v. Bartholomew County Hosp.* (1985), Ind.App., 476 N.E.2d 877 *trans. denied.* Summary Judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions, affidavits, and testimony, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Any doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. *Peterson v. Culver Educational Foundation* (1980), Ind.App., 402 N.E.2d 448. For purposes of determining if summary judgment is appropriate, a fact is said to be material if its existence facilitates the resolution of any of the issues involved. *Anderson v. State Farm Mut. Ins. Co.* (1984), Ind.App., 471 N.E.2d 1170. Summary judgment is appropriate when there is no dispute or conflict regarding facts which are dispositive of the dispute. *Madison County Bank & Trust Co. v. Kreegar* (1987), Ind., 514 N.E.2d 279. We may affirm the granting of summary judgment on any theory or basis found in the record, so that even though the trial court may have relied on one theory, we can review the pertinent materials and come to a conclusion supported by a different theory. *Howard v. H.J. Ricks Const. Co.* (1987), Ind.App., 509 N.E.2d 201, *trans. denied.* Summary judgment is a lethal weapon and courts must be mindful of its

aims and targets and beware of overkill in its use. *Mayhew v. Deister* (1969), 144 Ind.App. 111, 244 N.E.2d 448.

■ Before the advent of comparative fault[1], Indiana law was well settled that the release of one joint tortfeasor functioned as the release of all joint tortfeasors without regard to the express intent of the parties to preserve the victim's claim against other tortfeasors. *Bellew v. Byers* (1979), 272 Ind. 37, 396 N.E.2d 335; *Cooper v. Robert Hall Clothes, Inc.* (1979), 271 Ind. 63, 390 N.E.2d 155. The justification of the "release rule" has been articulated by our supreme court as follows:

> First, it prevents an unfair prejudice against the defendant by precluding the plaintiff from recovering in excess of his injuries by successively obtaining settlements from the various tortfeasors in return for releases. Second, joint tortfeasors 'constitute, in a sense, one entity, each of them being jointly and severally liable for injury to the plaintiff.'

*Bellew, supra,* 396 N.E.2d at 336, 337.

In *Gray v. Chacon* (S.D.Ind.1988), 684 F.Supp. 1481, Judge Barker of the United States District Court, S.D. Indiana, refused to apply the Indiana release rule in a federal diversity case governed by the Indiana Comparative Fault Act involving joint tortfeasors. She predicted the Indiana Supreme Court would decide that the legislative enactment of the Comparative Fault Act superseded the release rule. Judge Barker noted the justification of the release rule—as set out above—was completely undercut by the language of the Indiana Comparative Fault Act. She noted further that the Indiana Supreme Court has continued to adhere to the release rule despite intense criticism. For example, Judge Barker noted Judge Garrard's excellent criticism of the rule in his dissenting opinion in *Young v. Hoke* (1986), Ind.App., 493 N.E.2d 1279 *trans. denied.* We will set out a pertinent portion of Judge Garrard's criticism as follows:

---

1. Indiana's Comparative Fault Act, IND.CODE § 34-4-33-1 et seq., became effective January 1, 1985.

First, the rule itself has been termed 'an antiquated survival of an arbitrary common law procedural concept, arising out of long forgotten semi-criminal forms of action.' *Prosser & Keeton on Torts* (5th Ed.) p. 133 It is a 'surviving relic of the Cokian period of metaphysics.' Wigmore, *Release to One Joint–Tortfeasor*, 17 Ill.L.Rev. 563.

In operation its results have been characterized as incongruous.

'More often than otherwise they are unjust and unintended. Wrongdoers who do not make or share in making reparation are discharged, while one willing to right the wrong and no more guilty bears the whole loss.... The rule shortchanges the claimant or overcharges the person who settles.... Finally, it is anomalous in legal theory, giving tortfeasors an advantage wholly inconsistent with the nature of their liability.' (Citation omitted)

On the other hand, the supposed justifications for the rule appear illusory. The fear of double recovery is unfounded since the amount paid should be credited upon any judgment obtained against other tortfeasors and after judgment a plaintiff may proceed as he chooses in making collections from judgment debtors so the argument that he should not be allowed to proceed piecemeal has no merit. *Prosser & Keeton, supra,* p. 333.

To avoid some of these harsh consequences we have maintained a distinction between "releases" and other settlements denominated covenants not to sue, covenants not to execute or loan-receipt agreements. We have done so despite the fact that the distinction is entirely artificial.

493 N.E.2d at 1281. (Citation omitted; footnote omitted.)

Governmental entities have been exempted from the application of the Indiana Comparative Fault Act. I.C. 34–4–33–8. A governmental entity means "the state or a political subdivision of the state." I.C. 34–4–16.5–2(c). The Tort Claims Act defines a school corporation as a political subdivision. I.C. 34–4–16.5–2(f)(9). Therefore, in the case at bar, the Huffmans' lawsuit against MCCSC is governed by principles of common law and not the Comparative Fault Act.

In *Governmental Interinsurance Exchange v. Khayyata* (1988), Ind.App., 526 N.E.2d 745, a governmental entity brought a suit against an individual and the individual counterclaimed against the governmental entity. We noted the governmental entity's claim against the individual would be tried under principles of comparative fault, but that the individual's counterclaim against the governmental entity was governed under rules of common law because of the exemption of governmental entities under the Comparative Fault Act, I.C. 34–4–33–8. Further, we acknowledged the application of a combination of both comparative fault principles and common law principles in one lawsuit causes practical complications as well as inequities.

The present case is yet another example of the practical complications and inequities encountered in a case with multiple claims requiring the application of comparative fault along with common law principles. The Huffmans brought the suit against two governmental entities and a private organization. Common law was applicable to their claims against the governmental entities, TCTTSC and MCCSC, and the law of comparative fault was applicable to the claim against IHSAA. Had the Huffmans released the governmental entities, their suit against IHSAA—governed under principles of comparative fault—would have proceeded.

Also, the present case also demonstrates an inequity often cited by the critics of the general release rule. The Huffmans entered into a covenant not-to-sue with TCTTSC which did not trigger the release rule. However, the general release executed in favor of IHSAA did trigger the release rule and served to release MCCSC. As mentioned above, the distinction between the treatment of a covenant not-to-sue and a general release in the context of the invocation of the release rule is entirely artificial. In all probability, had the Huffmans styled their release of IHSAA as a

covenant not-to-sue instead of a general release, their suit against MCCSC would proceed.

We note that with the legislative enactment of the Comparative Fault Act which causes certain lawsuits to be governed by principles of comparative fault as well as common law, the release rule constitutes an even greater trap for the unwary than it did before the advent of comparative fault. We suggest that such a trap serves to discourage negotiated settlements.

■ In any event, regardless of whether the release rule has ever constituted anything but an abomination in law, we must follow our supreme court's precedents of *Bellew, supra*, and *Cooper, supra*. The general release rule remains applicable in cases governed by common law.

As noted above, the Huffmans' suit against MCCSC is governed by common law because governmental entities are exempted from the Comparative Fault Act. The release rule was triggered by the Huffmans' release of IHSAA which served to release all the joint tortfeasors including MCCSC. Therefore, the trial court correctly granted summary judgment in favor of MCCSC.

Judgment affirmed.

CHEZEM, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

While I agree with the majority's analysis of the absurdity created when the general release rule is injected into the comparative fault arena, I must dissent from the result they reach.

As the majority points out, the general release rule was crafted *before* the advent of Indiana's Comparative Fault Act. The rule is a judicial creation founded on traditional common law principles of negligence. These traditional concepts were updated when the Indiana General Assembly adopted the Comparative Fault Act. As Judge Garrard suggested in his dissent in *Young v. Hoke* (1986), Ind.App., 493

N.E.2d 1279, *trans. denied,* such a legislative overhaul requires revision of corresponding judicially created rules.

The policies underlying the creation of the general release rule were twofold. First, the rule was designed to prevent plaintiffs from recovering in excess of their injuries by successively obtaining settlements from different defendants in return for releases. *Bellew v. Byers* (1979), 272 Ind. 37, 396 N.E.2d 335. Second, the concept of joint and several liability treats multiple defendants as one entity for purposes of compensating a plaintiff for his injuries. *Id.* These policies are meaningless in cases involving defendants subject to the Comparative Fault Act and, thus, the general release rule should not apply.

When the remaining defendant or defendants are subject to the Comparative Fault Act, the concept of joint and several liability has been replaced by a scheme that apportions liability to reflect each defendant's percentage of fault attributable to the plaintiff's injuries. IND.CODE 34–4–33–5. When the remaining defendant or defendants are subject to traditional principles of negligence, the concept of partial satisfaction allows remaining defendants a credit for those amounts the plaintiff received from defendants with whom he settled. *Indiana State Highway Comm'n v. Morris* (1988), Ind., 528 N.E.2d 468. Thus, the plaintiff will not be permitted to recover in excess of his injuries in either case.

In the present case, the fact that the Huffmans titled their settlement agreement with IHSAA a "general release" instead of a "covenant not to sue" or a "covenant not to execute" is the only barrier preventing them from pursuing a claim against MCCSC. Such an exercise in form over substance is contrary to this State's commitment to encourage negotiated settlements. *Manns v. State Dep't of Highways* (1989), Ind., 541 N.E.2d 929.

I would adopt the analysis of Judge Barker in *Gray v. Chacon* (S.D.Ind.1988), 684 F.Supp. 1481, which determined that our Comparative Fault Act supersedes the common law general release rule. I would

reverse the trial court and allow the Huffmans to proceed against MCCSC.