**Junior JACKSON, Appellant–Plaintiff,**

v.

**INDIANA STATE LOTTERY COMMISSION, Appellee–Defendant.**

**No. 85A02–9110–CV–431.**

Court of Appeals of Indiana, Third District.

Jan. 27, 1992.

Rehearing Denied March 11, 1992.

Alfred H. Plummer III, Wabash, for appellant-plaintiff.

Ann M. Delaney, Barbara J. Germano, Price & Barker, Indianapolis, for appellee-defendant.

HOFFMAN, Judge.

Appellant-plaintiff Junior Jackson appeals the trial court's award of summary judgment to the appellee-defendant Indiana State Lottery Commission.

One issue is presented for review: whether the trial court properly granted summary judgment.

On February 7, 1990, Junior Jackson purchased three "Double Dollar" scratch off lottery tickets at the Burger Dairy Store in North Manchester, Indiana. Jackson placed the tickets in his shirt pocket and forgot about them. Two days later he found the tickets rolled up in his shirt pocket. The shirt had been placed in the washer and dryer, with the tickets in the pocket, by his wife. Jackson proceeded to scratch off the tickets with a coin. He claims that one of the tickets was a $50,-000.00 winning ticket. However, due to the laundering of the tickets, the validation number on the winning ticket was unreadable.

Jackson could not remember where he purchased the tickets so he took them to the Thomas Family Center in North Manchester, Indiana, from where he had purchased tickets previously. However, he was advised by an employee of the store that the ticket was purchased from the Burger Dairy Store. Jackson claims that the manager of the store and an employee confirmed that the ticket was a winning ticket. The manager gave Jackson a winner's claim form to submit to the lottery with his ticket.

Jackson proceeded to the Burger Dairy Store. He alleges that the manager and a customer saw the ticket and confirmed that it was a winning ticket.

At home, Jackson called the lottery commission and was told to mail the ticket to them. Jackson placed the ticket and the claim form in an envelope and mailed the envelope on February 9, 1990. He did not send the envelope by either certified or registered mail. However, he made a xerox copy of the ticket before mailing it.

On February 20, 1990, Jackson called the lottery commission to determine the status of his claim. A lottery official informed Jackson that neither the ticket nor the claim form had been received. Jackson then mailed another claim form with a photocopy of the ticket.

Jackson stated that on February 23, 1990, the same lottery official telephoned him and said that "everything looks pretty good" and that a security check would be done. On June 27, 1990, Jackson was notified by Brad Pryor, the prize payments manager for the Indiana State Lottery Commission, that the claim would not be honored. Pryor explained that without Jackson possessing the actual ticket or the lottery commission ever taking possession of that ticket, the commission was not legally obligated to honor the claim. However, Pryor stated that the commission goes beyond its legal obligation to try to verify claims. In Jackson's case, the commission had attempted to prove his claim was valid, even without the actual ticket, but could not do so.

Jackson filed his complaint against the Indiana State Lottery Commission on August 6, 1990. Both parties filed for summary judgment. The lottery commission

submitted the affidavit of Brad Pryor stating that due to the absence of the ticket and the absence of the validation numbers on the xerox copy of the ticket, the commission was unable to verify the ticket as a winning ticket. Additionally, Pryor had received information from the supplier of the tickets, Webcraft Games, Inc., showing that no $50,000.00 winning tickets had been sent to the Burger Dairy in North Manchester, Indiana, and that all $50,000.00 winning tickets had been accounted for.

■ Jackson claims that summary judgment was inappropriate due to remaining factual disputes. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Second Nat. Bank v. Massey–Ferguson Credit* (1985), Ind.App., 478 N.E.2d 916. A disputed fact is "material," so as to preclude entry of summary judgment, if its existence facilitates resolution of any of the issues involved. *Huffman v. Monroe Cty. Com. School Corp.* (1991), Ind.App., 564 N.E.2d 961. Therefore, summary judgment is appropriate when there is no dispute or conflict regarding facts which are dispositive of the dispute or conflict. *Id.* The trial court properly granted summary judgment to the Indiana State Lottery Commission as there is no dispute regarding the facts relevant to disposition of the case.

■ The Indiana State Lottery Commission has been given the authority by the Indiana legislature to adopt rules which govern the method of selecting winning lottery tickets. IND.CODE § 4–30–3–7(4) (1991 Supp.). This includes the authority to establish a system for verifying the validity of winning tickets and making prize payments. IND.CODE § 4–30–11–1 (1991 Supp.). IND.CODE § 4–30–11–4 (1991 Supp.) states the conditions under which tickets are determined to be invalid:

"A prize may not be paid if it arises from tickets that are determined to be:

(1) stolen, counterfeit, altered, fraudulent, unissued, produced or issued in error, or unreadable;

(2) not received or not recorded by the commission's applicable deadlines;

(3) lacking in captions that confirm and agree with the lottery play symbols that are appropriate to the lottery game involved; or

(4) not in compliance with any additional specific rules and public or confidential validation and security tests of the commission applicable to the particular lottery game involved."

Under three of the above subsections, the lottery commission was permitted to deny Jackson's claim. First, the lottery commission was entitled to deny Jackson's claim under subsection two; Jackson's ticket was never received by the commission. However, even if the commission wanted to consider the xerox copy of the ticket, it is unreadable and, thus, invalid under subsection one. The validation number on the xerox copy of the ticket is unreadable, and Jackson admits that the validation number was not readable on the missing ticket as well. Finally, under subsection four, the ticket does not comply with other specific rules. For instance, the ticket does not comply with 65 A.I.C. § 4–2–5(a) which requires the winning ticket to be intact and not defaced in any manner. Moreover, 65 A.I.C. § 4–2–7 advises that an instant ticket is a bearer instrument until it is signed on the back by the owner, and the owner of an instant ticket is responsible for and bears the sole risk of loss or theft of the instant ticket.

In his appellate brief, Jackson argues that the use of the word "may" in IND. CODE § 4–30–11–4 and the provision set out in 65 A.I.C. § 4–2–6(a) give rise to discretionary conditions governing the payment of mutilated, unreadable, or missing lottery tickets. This is true except that it is the lottery commission's discretion to honor such tickets. Furthermore, as Jackson notes in his reply brief, 65 A.I.C. § 4–2–6(a) is not applicable to this case. In that section, a person claiming a prize in an instant game, who is unable to produce the alleged winning ticket or who has a mutilated or unreadable ticket, may submit an affidavit to the director setting forth all

facts surrounding the claim. There is no evidence that Jackson complied with this procedure.

Even without being required to do so, the lottery commission investigated Jackson's claim. The affidavits submitted by the commission show that a $50,000.00 winning ticket was not sent to the Burger Dairy Store in North Manchester and all the $50,-000.00 winning tickets had been accounted for. The trial court properly granted summary judgment to the Indiana State Lottery Commission.

Affirmed.

STATON and CONOVER, JJ., concur.