**Walter KERR, Appellant–Plaintiff,**

v.

**Dr. Cris J. CARLOS, Chua Medical Corporation, Inc., and St. Anthony Medical Center, Appellees–Defendants.**

**No. 56A05–9105–CV–188 [1].**

Court of Appeals of Indiana,
First District.

Dec. 16, 1991.

---

1. This case was reassigned to this office by order of the Chief Judge.

Christian John Gielow, Merrillville, for appellant-plaintiff.

David C. Jenson, Maureen Johns Grimmer, Douglas B. Stebbins, Eichhorn, Eichhorn & Link, Hammond, for appellees-defendants.

ROBERTSON, Judge.

Walter Kerr appeals the summary judgment entered against him in his medical malpractice action against Dr. Cris J. Carlos, Chua Medical Corporation, Inc., and St. Anthony Medical Center. Kerr raises three (3) issues, none of which constitutes reversible error.

## FACTS

The facts in the light most favorable to the nonmovant, Kerr, indicate that, on May 7, 1986, Dr. Carlos, who was associated with the Chua Medical Corporation, performed double coronary by-pass surgery upon Kerr at the St. Anthony Medical Center. Kerr did not consent to be operated on by Dr. Carlos and had expected Dr. Chua to perform the operation. On June 30, 1986, an angiogram revealed that the artery involved in the surgery was occluded. In August of 1986, Dr. Chua performed by-pass surgery upon Kerr and this time the procedure was successful.

Kerr's complaint alleged that the defendants "acted carelessly and negligently and failed to meet the standard of care of the local medical community before, during and after a coronary bypass operation on May 7, 1986." Kerr submitted his complaint to the medical review panel which found in favor of the defendants.

Kerr filed suit on May 14, 1990. Kerr never served the defendants with any discovery requests. Kerr never obtained an expert's opinion that Dr. Carlos' performance fell below the appropriate standard of care. Kerr hired an expert, Dr. Jacobs. However, Jacobs could not conclude that the result Kerr received from Dr. Carlos'

surgery was the result of technical negligence.

On May 28, 1990, the defendants moved for summary judgment on the basis that Kerr could not produce expert testimony in support of his lawsuit. On November 28, 1990, the trial court held a hearing on the motion for summary judgment. Kerr requested and received additional time (until December 17, 1990) to file a legally sufficient affidavit of an expert. However, Kerr was unable to obtain such an affidavit and the trial court entered summary judgment against him on February 13, 1991.

## DECISION

■■■■ Initially, we will set out the well-settled standard for summary judgment. The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18. When we review a motion for summary judgment, we apply the same standard as that employed by the trial court. *King v. Bartholomew County Hosp.* (1985), Ind.App., 476 N.E.2d 877, *trans. denied.* Summary Judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions, affidavits, and testimony, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Any doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. *Peterson v. Culver Educational Foundation* (1980), Ind.App., 402 N.E.2d 448. For purposes of determining if summary judgment is appropriate, a fact is said to be material if its existence facilitates the resolution of any of the issues involved. *Anderson v. State Farm Mut. Auto Ins. Co.* (1984), Ind.App., 471 N.E.2d 1170. Summary judgment is appropriate when there is no dispute or conflict regarding facts which are dispositive of the dispute. *Madison County Bank & Trust Co. v. Kreegar* (1987), Ind., 514 N.E.2d 279. Summary judgment is a lethal weapon and courts must be mindful of its aims and targets

and beware of overkill in its use. *Mayhew v. Deister* (1969), 144 Ind.App. 111, 244 N.E.2d 448.

■■■■ Rarely is a negligence case appropriately disposed of by summary judgment, especially when the critical question for resolution is whether the defendant exercised the degree of care under the factual circumstances. *Stumph v. Foster* (1988), Ind.App., 524 N.E.2d 812. Generally, expert testimony establishing that the professional's performance fell below the requisite standard of care is necessary to establish a prima facie case of medical malpractice. *Id.* Generally, expert opinion is indispensable to an evaluation of a particular doctor's conduct within the framework of the duty imposed by law and the failure to come forward with such an expert opinion warrants entry of summary judgment. *Id.*

■■■■ However, expert testimony is required only when the issue of care is beyond the realm of lay persons. *Id.* The standard of care need not be established by expert opinion when the doctor's conduct was understandable by a jury without extensive technical input. *Burke v. Capello* (1988), Ind., 520 N.E.2d 439.

## I.

### *Dr. Carlos' Surgical Performance*

Kerr asserts expert testimony is not essential to his malpractice claim against Dr. Carlos as it relates to his performance in surgery. Kerr asserts that it is common knowledge that a by-pass operation to clear arteries should not result in occluded arteries less than one month later. Therefore, he asserts that expert testimony is not essential to his claim.

The experts on the medical review panel concluded that Dr. Carlos was not negligent in his performance of the by-pass operation. Kerr's expert, Dr. Jacobs, could not conclude that the result Kerr received from Dr. Carlos' surgery indicated "technical negligence."

■■■■ A physician does not undertake absolutely to cure but is bound to possess

and exercise the average degree of skill possessed and exercised by members of the profession practicing in similar localities. *Bassett*, 368 N.E.2d 18. We believe that the issue of technical negligence in the performance of coronary by-pass surgery to be "peculiarly within the knowledge of medical men ..." *Stumph*, 524 N.E.2d at 816. We cannot conclude that a lay jury, uninstructed by expert testimony, could appropriately conclude that Dr. Carlos' performance of the coronary by-pass surgery fell below the requisite standard of care. Therefore, we find no error with respect to the trial court's entry of summary judgment against Kerr with regard to his claim that Dr. Carlos committed malpractice during the May 7, 1986 surgery upon Kerr.

## II.

### Informed Consent

Kerr argues that Dr. Carlos' failure to obtain his consent before surgery gives rise to a malpractice action based on the doctrine of informed consent. As noted above, he alleged that Dr. Carlos completely failed to obtain his consent to the procedure and that he expected Dr. Chua to perform the surgery. He implies that had Dr. Chua performed the surgery the first time, it would have been a success and the second operation would have been unnecessary. He argues further that a lay jury would be competent to infer negligence under the facts of this case.

The doctrine of informed consent is a negligence theory. *Rumple v. Bloomington Hospital* (1981), Ind.App., 422 N.E.2d 1309. The critical issue in an informed consent case is whether the patient was subjected to the inherent risks of the proposed treatment without being permitted to intelligently reject or accept treatment. *Revord v. Russell* (1980), Ind. App., 401 N.E.2d 763. Under the doctrine of informed consent, expert opinion is generally necessary to establish the causal connection between the inadequate disclosure and the resulting damages. *Ellis v. Smith* (1988), Ind.App., 528 N.E.2d 826.

We believe that a lay jury would be incompetent to determine that Dr. Chua's surgical skills were so superior to those of Dr. Carlos that, had the first by-pass surgery been performed by Dr. Chua, it would have been successful. We believe this is especially true considering that it would appear that no medical expert is available to testify that Dr. Carlos' performance fell below the requisite standard of care. We must conclude that expert testimony was essential to establish the proximate cause element of Kerr's action against Dr. Carlos based on the doctrine of informed consent. Therefore, we hold the trial court committed no error in entering summary judgment against Kerr on this issue.

Moreover, we believe that Kerr has erroneously characterized his cause of action. We note that the complete failure of a physician to obtain informed consent before proceeding with surgery is more appropriately characterized as a battery, not negligence. *Perna v. Pirozzi* (1983), 92 N.J. 446, 457 A.2d 431, 39 A.L.R.4th 1018; *See generally*, Miller, *Annotation—Recovery By Patient On Whom Surgery Or Other Treatment Was Performed By One Other Than Physician Who Patient Believed Would Perform It*, 39 A.L.R.4th 1034.

In summary judgment proceedings, any legal theory which is not properly presented to the trial court is waived. *Franklin Bank and Trust Co. v. Mithoefer* (1990), Ind., 563 N.E.2d 551. Therefore, we must conclude that any claim by Kerr against Dr. Carlos sounding in battery has not survived summary judgment.

## III.

### Whether Summary Judgment Was Premature?

Kerr argues that the trial court erred in granting summary judgment against him based in his failure to obtain an expert witness because no discovery cut off date had been set and continuing efforts were being made to obtain an expert. Kerr points out—for reasons that escape us— that he hired Dr. Jacobs, paid for his ser-

vices, but did not receive an opinion which would benefit him at trial. Kerr suggests that the trial court should have given him until sixty (60) days before trial to obtain an expert.

At the outset of the discussion of this issue, we note that Kerr's suggestion is not well taken. We believe it would be quite illogical and a waste of precious judicial resources to require the trial court to reserve sufficient space on its calendar for a full-blown medical malpractice trial before it is clear that the action can survive summary judgment.

Kerr's cause of action accrued in 1986. Kerr has never served any discovery requests upon the defendants. Nor has he made any attempt to obtain an expert the entire time his claim was pending before the medical review panel even though he was specifically permitted to do so under Ind.Code 16–9.5–9–4(a). *See Hepp v. Pierce* (1984), Ind.App., 460 N.E.2d 186. The review panel had ruled in favor of all the defendants by February 13, 1990. Suit was filed May 14, 1990. On October 9, 1990, the defendants moved for summary judgment on the basis of Kerr's failure to obtain an expert. Argument was held on this motion on November 27, 1990. Kerr requested and received additional time to obtain an expert (until December 27, 1990) pursuant to Ind.Trial Rule 56(F). The trial court entered summary judgment on February 13, 1991.

On a motion for summary judgment, when evidence presented by the movant establishes a lack of any genuine issue of material fact, the nonmovant may not rest upon the mere allegations or denials of his pleadings, but must respond by affidavit or by other appropriate evidence, setting forth specific facts showing that there is a genuine issue for trial. *Watson v. Medical Emergency Services* (1989), Ind. App., 532 N.E.2d 1191, *trans. denied.* We believe it should have been obvious from the inception of this case that expert testimony was essential to a successful prosecution of Kerr's claim. Under all the circumstances, we believe that Kerr was provided ample opportunity to secure the services of an expert and we cannot conclude that the trial court erred by entering summary judgment prematurely. Therefore, we find no error.

Judgment affirmed.

SHARPNACK and RUCKER, JJ., concur.