Manuel A. CACDAC, M.D., Appellant–Defendant,

v.

Brenda WEST, Appellee–Plaintiff,

and

Ramana Reddy, M.D., Non–Appealing Defendant.

No. 84A01–9712–CV–407.

Court of Appeals of Indiana.

Jan. 26, 1999.

R. Steven Johnson, Sacopulos Johnson Carter & Sacopulós, Terre Haute, Indiana, for appellant.

Jerry Garau, Mary Findling, Findling Garau Germano & Pennington P .C., Indianapolis, Indiana, for appellee.

## OPINION

KIRSCH, Judge.

Manuel A. Cacdac, M.D. (Cacdac) appeals the trial court's denial of his motion for partial summary judgment on several issues. Brenda West (West) cross-appeals the grant of Cacdac's motion on one issue. Together, the parties present the following issues for review:

I. Whether the trial court erred in determining there were genuine issues of material fact that precluded sum-

mary judgment on the issue of whether Cacdac failed to obtain informed consent from West to perform surgery on her.

II. Whether the trial court erred in determining there were genuine issues of material fact that precluded summary judgment on the issue of whether Cacdac's representations to West constituted actionable fraud.

III. Whether the trial court erred in concluding as a matter of law that the Indiana Medical Malpractice Act does not prohibit an award of punitive damages and that West may pursue her punitive damages claim against Cacdac.

IV. Whether the trial court erred in concluding that Cacdac's performance of surgery without obtaining West's informed consent did not constitute a battery.

We affirm the denial of summary judgment on Issues I, II, and III, and reverse the grant of summary judgment on Issue IV.

## FACTS AND PROCEDURAL HISTORY

Cacdac is a neurosurgeon practicing in Terre Haute. West suffered from low back pain and left lower extremity pain and became a patient of Cacdac's in November 1988. Cacdac performed surgery on West in December 1988. West claims that she consented to the surgery based on Cacdac's representations that she risked becoming paralyzed if she declined the surgery.

West submitted her claim against Cacdac and others involved to the Medical Review Panel and then filed her complaint in the trial court alleging that the surgery Cacdac performed was medically unindicated, was improperly performed, was performed without obtaining West's informed consent, and that Cacdac's follow-up care was negligent. West's complaint also alleged that Cacdac fraudulently induced her to undergo the unnecessary surgery by misrepresenting the risks of foregoing it.

Cacdac filed a motion for partial summary judgment on West's claims that the surgery and follow up care were performed negligent-

ly. West conceded these issues and the trial court granted the motion. Cacdac then filed a second motion for partial summary judgment directed at West's claims that Cacdac misrepresented that West needed surgery, that her consent was invalid, that Cacdac committed battery by performing the surgery without her informed consent, and that she was entitled to punitive damages. The trial court granted Cacdac's motion on West's battery claim and denied it on the remaining issues. At Cacdac's request, the trial court certified the ruling for interlocutory appeal, and this court accepted the case pursuant to Indiana Appellate Rule 4(B)(6).

## DISCUSSION AND DECISION

Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). When reviewing a motion for summary judgment, this court applies the same standard utilized by the trial court, and we resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933, 936 (Ind.Ct.App.1996). We will affirm a trial court's grant of summary judgment if it is sustainable on any theory found in the evidence designated to the trial court. *Id.*

### I. Whether Cacdac Failed to Obtain Informed Consent

Cacdac first argues that the trial court erred in determining that there were genuine issues of material fact on the issue of whether he failed to obtain West's informed consent to the surgery. He bases his argument on IC 16–9.5–1–4, which was the informed consent law in force at the time of the events in question. That statute created a rebuttable presumption that the consent provided by the patient was an informed consent if it was in writing, signed, witnessed, and explained to the patient before the procedure was performed. The statute further provided that the explanation must include, among other things, the general nature of the patient's condition, the material risks of the treatment,

and the reasonable alternatives to the treatment. Cacdac asserts that because he complied with these requirements, there exists a rebuttable presumption that West gave an informed consent to the surgery.

■ Cacdac's argument begs the question. At issue here is whether Cacdac accurately explained to West the risk of foregoing the surgery. The designated material includes West's testimony that in explaining her treatment options, Cacdac told her that if she opted to forego the surgery, she could become paralyzed by twisting or stepping off a curb the wrong way. In terms of the statute, the material issue of fact is whether Cacdac did in fact explain to West her condition and the reasonable alternatives to the surgery. These are conditions precedent to the rebuttable presumption. Whether they have been satisfied are material questions of fact, and until these factual issues have been determined. Thus, the rebuttable presumption does not arise.

■ Cacdac also contends that he did not fail to inform West of a risk that a reasonably prudent physician would have disclosed. In *Culbertson v. Mernitz*, 602 N.E.2d 98 (Ind.1992), our supreme court held that the standard for evaluating the quality of the information given to a patient in conjunction with obtaining her consent to a procedure should be evaluated according to the "reasonably prudent physician" standard. *Id.* at 103. Accordingly, a plaintiff alleging a failure to obtain informed consent must present expert medical testimony to establish whether a physician's disclosure of risks comports with what a reasonably prudent physician would have disclosed. *Id.* In this case, both West and Cacdac have presented expert testimony about whether Cacdac fairly communicated to West the risks of alternative courses of treatment. These experts disagree with regard to whether Cacdac's statements and actions met the standard of the reasonably prudent physician. Dr. Robert Cravens, a member of the Medical Review Panel, testified that, although there was a chance that West's condition would improve without the surgery, she should also have been informed of the risk of paralysis that

she undertook by foregoing the procedure. He testified,

"Q: So in this case it's your opinion that it was appropriate for Dr. Cacdac to say to Brenda Brown 'Your options are surgery or continue taking the medicine but be aware that you could step off the curb the wrong way or twist the wrong way and be paralyzed'?

A: I'm not saying that that was correct in stating it that way, but I think if you want him to say there's a chance that she can get absolutely normal from this and be pain-free, then I think you have to go the other way and say 'There's a chance you can be paralyzed.'"

*Record* at 1667. However, West's expert, Dr. Karl Manders, testified that the risk of paralysis was incredibly small, and that both Cacdac and Dr. Cravens were overstating that risk. About Dr. Cravens' testimony, Dr. Manders stated,

"I think it's a ridiculous statement. I doubt Doctor Cravens or any other orthopedic surgeon has seen two or three percent of patients who have had the condition that Brenda West presented result in paralysis.... Is it possible? I would have to say anything is possible. Is it no more than two or three percent? I would say that is absolutely ludicrous."

*Record* at 1777. Dr. Manders' opinion is that Cacdac's communication to West did not meet the standard of the reasonably prudent physician. This conflicting expert testimony creates a genuine issue of fact for resolution by the trier of fact. As such, this issue is inappropriate for resolution by summary judgment. The trial court did not err.

### II. Whether Cacdac's Statements Constitute Actionable Fraud

■ Cacdac next argues that any statements he made about West's possible future paralysis did not amount to actionable fraud. To sustain an action for fraud, it must be proven that a material representation of a past or existing fact was made which was untrue and known to be untrue by the party making it or else recklessly made and that another party did in fact rely on the representation and was induced thereby to act to

his detriment. *Fleetwood Corp. v. Mirich,* 404 N.E.2d 38, 42 (Ind.Ct.App.1980). To purposely misstate facts which would cause the signing of a document is fraud. *Id.* at 45. Cacdac first contends that the statements relied upon by West were not fraudulent because they were true. Again, he points to the expert testimony for support. On the issue of whether West faced the possibility of paralysis, Dr. Cravens testified:

"Q: You think that's a definite possibility in this case?

A: I think it's a possibility, yes.

Q: What percent?

A: I think it's a small percentage, it probably happens in no more than 2 or 3 percent, but it's a possibility."

*Record* at 1666–67. However, Dr. Manders testified about the possibility of paralysis as follows:

"I think it's a ridiculous unlikelihood. I think the chance of that happening—I have never seen it happen in 40 years with a spondylolisthesis, and with the type of pathology that this patient had. I think the chance of that happening would be a fraction of one tenth of one percent. Almost impossible."

*Record* at 692.

Viewing these statements in the light most favorable to West, the non-movant, we conclude that the opinions of Dr. Cravens and Dr. Manders create a genuine issue of material fact about whether Cacdac's statements were true. A fair reading of Dr. Manders' testimony is that he believes that paralysis from West's condition was virtually impossible and that Cacdac's statements to West that she could become paralyzed from everyday movement were false because they conveyed the misimpression that such an occurrence was likely. Thus, West's fraud claim was inappropriate for resolution by summary judgment.

Cacdac also contends that the statements were not fraudulent because they did not relate to a present existing fact, but to a future occurrence. One of the elements of a cause of action for fraud is a material misrepresentation of a past or existing fact. *Fleetwood Corp.,* 404 N.E.2d at 42. In this case, West alleges that Cacdac purposely overstated the risk to her of her current condition if she decided not to have the surgery and to simply continue taking medication to control her pain. Cacdac's statements refer to her condition as it existed at the time of their conversation. Thus, it does relate to a present and existing fact, contrary to Cacdac's argument. There are genuine issues of material fact relating to West's claim of fraud that preclude the entry of summary judgment on that claim.

### III. Punitive damages

Cacdac also argues that the trial court erred in denying summary judgment on West's claim for punitive damages. Cacdac argues that, as a matter of law, West may not seek punitive damages because West brings her claim pursuant to the Indiana Medical Malpractice Act. With regard to damages for patients injured by the malpractice of a health care provider, the Act states that "[t]he total amount recoverable for an injury or death of a patient may not exceed ($500,000). . . ." IC 27–12–14–3, repealed by P.L. 1–1998, Sec. 221 (current version at IC 34–18–14–3). Our supreme court has held that the Act requires that recoveries be limited in amount, but "to this extent the right to have the jury assess the damages is available." *Johnson v. St. Vincent Hosp., Inc.,* 273 Ind. 374, 401, 404 N.E.2d 585, 602 (1980).

■ The Act is in derogation of the common law and must be strictly construed. *Methodist Hosp. of Indiana, Inc. v. Ray,* 551 N.E.2d 463, 468 (Ind.Ct.App.1990), *adopted on trans.,* 558 N.E.2d 829 (Ind.1990). As such, we conclude that the Act only lays out the procedural mechanism for disposing of claims of medical malpractice; it does not alter the substantive law to be applied in the adjudication of those claims on the merits. Under Indiana law, punitive damages may be awarded upon a showing of a 'quasi-criminal' state of mind or willful and wanton misconduct which, under existing circumstances, the tortfeasor knows will probably result in injury. *Mitchell v. Stevenson,* 677 N.E.2d 551, 564 (Ind.Ct.App.1997), *trans. denied.* Conduct which is oppressive or amounts to gross negligence justifies punitive damages. *Id.* Nothing in the Indiana Medical Malpractice

Act prohibits the award of punitive damages, and we know of no reason physicians or other medical personnel who engage in such conduct should be immune from such damages.

 The existence of circumstances justifying punitive damages is a question for the trier of fact. *See id.* In this case, whether Cacdac's conduct rises to the level to support the imposition of punitive damages is a question of fact. The trial court did not err in denying Cacdac's motion for summary judgment on West's claim for punitive damages.

## IV. Whether the Performance of Surgery Without Consent Constitutes a Battery

West counter-appeals the trial court's decision to grant partial summary judgment on her battery claim. In doing so, the court held that "[i]n order to sustain a theory of battery, the plaintiff must establish a complete failure by the physician to obtain any consent from the patient." *Record* at 1967. The court concluded that because Cacdac obtained consent from West, the surgery did not constitute a battery. We hold that this portion of the trial court's ruling was error.

Although this court has never been presented with the issue before us today, the misstatement of the risks of alternate courses of treatment, we have had occasion to comment on negligence and battery in other informed consent contexts. In *Kerr v. Carlos*, 582 N.E.2d 860 (Ind.Ct.App.1991), *overruled on other grounds, Kennedy v. Murphy*, 659 N.E.2d 506 (Ind.1995), Kerr claimed that Dr. Carlos failed to obtain his informed consent to by-pass surgery. In that case, Dr. Chua consulted with Kerr about the procedure. When Kerr consented to undergo the surgery, he believed that Dr. Chua would be performing the surgery. Dr. Carlos actually performed the surgery. Kerr claimed that Dr. Carlos' complete failure to obtain consent for the surgery constituted malpractice. The issue before the court was whether Dr. Carlos was entitled to summary judgment on Kerr's negligence claim. The court began its discussion of the issue by noting that the doctrine of informed consent is a negligence theory. *Id.* at 864

(citing *Rumple v. Bloomington Hospital*, 422 N.E.2d 1309 (Ind.Ct.App.1981), *trans. denied*). The court stated that the critical issue in an informed consent case is whether the patient was subjected to the inherent risks of the proposed treatment without being permitted to intelligently reject or accept treatment. *Id.* It concluded that Dr. Carlos was entitled to summary judgment and that Kerr had erroneously characterized his action as one sounding in negligence, noting that the complete failure of a physician to obtain informed consent before proceeding with surgery is more appropriately characterized as a battery, not negligence. *Id.* Accord *Van Sice v. Sentany*, 595 N.E.2d 264, 268 (Ind.Ct.App.1992) (holding that allegations of fraud and battery fell within Medical Malpractice Act's definition of malpractice and stating that doctrine of informed consent is a negligence theory, but failure to obtain informed consent rises to level of battery when physician completely fails to obtain informed consent).

In a case factually similar to *Kerr, Boruff v. Jesseph*, 576 N.E.2d 1297 (Ind.Ct.App. 1991), Mrs. Boruff consented to surgery to be performed by Dr. Jesseph. She specifically withheld her consent to Dr. Milan, Dr. Jesseph's partner, performing the surgery. Dr. Milan performed the surgery. She and her husband brought a claim of battery against the physicians. In holding that the Boruffs' claims were subject to the Medical Malpractice Act, the court stated, "[t]he real question the Boruffs raise is one of informed consent, and informed consent actions are based upon a breach of the physician's duty to 'make reasonable disclosure of material facts relevant to the patient's decision about treatment ... i.e., negligence, not battery.'" *Id.* at 1299 (quoting *Collins v. Thakkar*, 552 N.E.2d 507, 511 n. 6 (Ind.Ct.App.1990), *trans. denied*).

The majority opinion in *Boruff* drew a dissent from Judge Barteau, who stated, "[i]t is hornbook law that a surgeon who exceeds the scope of a patient's consent commits battery." *Id.* at 1299 (relying on W. PAGE KEETON, PROSSER AND KEETON ON TORTS 118–19 (5th ed.1984)). She disagreed that the conduct at issue in that case gave rise to a claim

of negligence because "[t]he question is not whether Milan's surgical technique was compatible with the standard of care for doctors in that area. The success or failure of the operation is immaterial to the battery claim. Had the operation been successful, Boruff would still be entitled to damages if she proved the elements of her claim." *Id.*

■ This case law regarding informed consent to medical procedures demonstrates some disagreement among the members of this court regarding whether a physician commits a battery when he or she fails to obtain informed consent from a patient. We find that no bright-line rule can be drawn from these cases between conduct that constitutes negligence and that which constitutes battery in cases where the plaintiff alleges that the consent given was based on erroneous or incomplete information.[1] Instead, the failure to obtain informed consent claim has elements of both battery and negligence. The greater the physician's failure, the more akin to battery; the lesser the failure, the more akin to negligence. This is not to say that every omission in the explanation of a procedure and its risks and benefits gives rise to an action for battery. Rather, an informed consent procedure that falls far short of that mandated by the relevant standard of care could, in some circumstances,

support such a claim. Examples of such circumstances include gross negligence, fraud, or the intentional withholding of information.

■ Here, West alleges that Cacdac's statements were fraudulent. She claims that she was induced to consent to the surgery by Cacdac's fraudulent representations that she faced a real risk of paralysis by opting to forego the surgery. We therefore hold that West's claim for battery is not barred as a matter of law. Accordingly, the trial court erred in granting summary judgment, and we reverse the entry of partial summary judgment on West's battery claim.

Affirmed in part, reversed in part.

STATON, J., and ROBB, J., concur.

---

1. Legal authorities are in similar disagreement. The Restatement (Second) of Torts notes,

> "If a surgeon obtains a patient's consent to an operation without informing him of the nature of the operation or the extent of the harm that is necessarily involved, the patient's consent is held not to be an 'informed consent.' If, to the knowledge of the surgeon, the patient was not aware of what he was consenting to and he was not consciously ignorant and ready to give consent to the surgeon to operate in any way he sees fit, then the patient's consent was induced by a substantial mistake and in accordance with Subsection (2) it is not effective as a defense to the action of battery.
> Some courts have taken this principle and applied it also to the case in which the surgeon obtains consent to an operation without disclosing all of the significant risks that may be involved in the operation. Under a broad application of this sort, an action of battery would lie for failure to disclose the risks regardless of whether the operation were performed negligently or not."

RESTATEMENT (SECOND) OF TORTS, § 892B cmt. i (1979). The comment also notes that a substan-

tial number of other courts have treated this situation in terms of a failure to conform to professional standards of conduct, i.e., negligence.

Another commentator notes the same split of authority:

> "If the physician fails to make a required disclosure, and knows that the patient is substantially mistaken about the hazards of the proposed treatment, the patient's consent could be considered ineffective under the principle described in the text, and the physician could be considered subject to liability for battery. Some courts have taken this position. Most authorities, however, prefer to treat informed consent liability solely as an aspect of malpractice or negligence, rather than battery."

FOWLER V. HARPER ET AL., THE LAW OF TORTS § 3.10 (3d ed.1996). These commentators recognize that the wide spectrum of factual circumstances that could give rise to a claim for lack of informed consent vary in degree of physician culpability. We, likewise, believe that it is preferable to allow plaintiffs bringing informed consent claims to pursue claims for battery or for negligence, depending on the particular facts and circumstances.