Victoria SANBORN, Plaintiff–Appellant,

v.

Walter ZOLLMAN, M.D., d/b/a the Zollman Center for Plastic and Hand Surgery, Defendant–Appellee.

No. 00–4045.

United States Court of Appeals, Sixth Circuit.

July 16, 2002.

Before BATCHELDER and CLAY, Circuit Judges; and ALDRICH, District Judge.*

CLAY, Circuit Judge.

Plaintiff, Victoria Sanborn, appeals from the judgment entered by the district court on July 31, 2000, dismissing Plaintiff's case on a motion for Judgment as a Matter of Law filed by the Defendant, Walter Zollman, M.D. d/b/a The Zollman Center for Plastic and Hand Surgery, in this medical malpractice case brought in federal court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332, and the amount in controversy greater than $75,000. For the reasons set forth below, we REVERSE and REMAND the case back to the district court.

## STATEMENT OF FACTS

### Procedural History

Plaintiff filed a complaint on January 7, 1997, naming Walter Zollman, M.D. and his medical practice, The Zollman Surgery Center, Inc., a/k/a The Zollman Center for Plastic and Hand Surgery, and others, alleging claims of medical malpractice in connection with the surgical procedure Plaintiff underwent known as "large volume liposuction." Defendants filed a motion to dismiss, and the trial court dismissed the claims against Walter Zollman, M.D. for lack of *in personam* jurisdiction, but allowed the action to proceed against The Zollman Surgery Center, Inc., and allowed Plaintiff to amend the complaint substituting Walter Zollman, M.D. d/b/a

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

The Zollman Center for Plastic and Hand Surgery as the sole Defendant.

The action was set for trial on July 24, 2000, and a pretrial conference was held on July 20, 2000. During the conference, the question arose regarding whether expert testimony would be required in order for Plaintiff to support her informed consent claim or, more specifically, her claim that Defendant proceeded without Plaintiff's consent. In response to this question, the trial judge opined.

> And in light of the fact that she does not need expert testimony with regard to the lack of informed consent, while you may have interpreted that as misleading, and it may have indeed mislead [sic] you, nevertheless, that does not necessarily convert to there are no other claims.... [I]f you have a nurse who has something to say that is contrary to the written document, that may be interesting, but I don't know if she can even testify contrary to what is within the four corners of that informed consent, where Mr. Sanborn has marked off that he may not have any assistants performing the surgery.

(J.A. at 343–44.)

At the same pretrial conference, the issue was raised as to whether Plaintiff's claim that Defendant proceeded with Plaintiff's consent was effectively a claim for civil battery under Indiana law. In response to this inquiry, the trial judge opined:

> What I notice in the case that has been cited, *Bowman versus Beghin,* that there is no reference to the element of rude, insolent or angry touching, which certainly did not apply to *Bowman versus Beghin.* I don't agree with defendants that *Bowman versus Beghin* is an entirely different factual case from the present one. It is basically a case where the patient would not have consented to

the surgery, had he known that the surgeon would not perform the two surgeries that he was anticipating.

> Ms. Sanborn is saying "I would not have consented to the surgery if I had known that Dr. Zollman would not do the entirety of the surgery. I specifically indicated in my informed consent that I did not want anyone else to perform the surgery."

(J.A. at 346.)

The case proceeded to trial, and at the close of Plaintiff's case in chief, Defendant moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 on the two issues involved: 1) whether Defendant proceeded despite Plaintiff's lack of informed consent; and 2) whether Defendant committed medical malpractice in failing to conform his post-operative conduct to the requisite standard of care. The trial court granted the Rule 50 motion as to the second issue, but took the issue of informed consent under advisement.

Defendant thereupon rested and renewed its motion for judgment as a matter of law on the issue of informed consent. Plaintiff and Defendant offered additional argument, and the court granted Defendant's motion. Plaintiff filed a motion for a new trial on August 10, 2000, which the district court denied. Plaintiff now challenges only the district court's order granting Defendant's motion on her informed consent claim.

### Facts

Plaintiff decided to have an elective surgical procedure known as "large volume liposuction" for the purpose of weight reduction. She met with Dr. Zollman at his clinic in Indianapolis, Indiana, after responding to an advertisement in the Cincinnati Enquirer. At the Zollman Center,

Plaintiff was shown an informational video in which Dr. Zollman appeared, and she spoke at length with Dr. Zollman. After this meeting, Plaintiff decided to have the surgery, and scheduled July 14, 1995, as the day the procedure should be performed.

When Plaintiff returned to the Zollman Center on July 14, she was given a number of forms to read and to sign. On one of the forms, the following language appeared:

> As a patient of The Zollman Surgery Center, I authorize Dr. Zollman (and whomever he/she may designate as his/her assistants) to administer such treatment as necessary, and to perform the following operation(s): Suction lipectomy medial/lateral thighs upper back flanks abdomen chin and such additional operations and procedures as are considered therapeutically necessary on the basis of findings during the course of said operation(s). I also consent to the administration of the following types of anesthesia: General by Dr. Williams . . . .

(J.A. at 454.) Prior to signing this document, Plaintiff crossed out the portion in the parenthetical which gave consent for the surgery to be performed by "whomever he/she may designate as his/her assistants." Other releases were signed by Plaintiff, but none of these related to any other physician or personnel participating in the surgery other than Dr. Zollman.

However, despite Plaintiff crossing out the language as indicated in the consent form, the record indicates that several other physicians and assistants participated in Plaintiff's surgery. For example, Dr. Dion Chavis, a plastic surgeon performed part of the procedure, as did Rex Haller, a certified surgical technician, both at the direction of Dr. Zollman. Plaintiff notes that although Dr. Zollman testified that he believes that it is implicit to the public that many, if not all, surgeries utilize multiple personnel, from technicians to nurses to anesthesiologists to other surgeons, there was no testimony or exhibit offered at trial which demonstrated such knowledge being imparted to Plaintiff, other than the language crossed out by Plaintiff on the consent form prior to her signing it. Plaintiff filed suit claiming that Dr. Zollman's testimony and belief aside, Plaintiff did not consent to her surgery being performed by anyone other than Dr. Zollman, and yet he personally directed at least one other surgeon and a medical technician to perform part of the surgery in his presence.

## DISCUSSION

This Court reviews a district court's decision on a Rule 50(b) motion *de novo* using the same test that the district court must apply. *Gray v. Toshiba Am. Consumer Prods.,* 263 F.3d 595, 598 (6th Cir. 2001) (citing *K & T Enters., Inc. v. Zurich Ins. Co.,* 97 F.3d 171, 174–75 (6th Cir. 1996)). Which is to say, the motion may be granted only if in viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party. *Id.* When federal court jurisdiction is based on diversity of citizenship, we apply the law of the forum state. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

A. Plaintiff Was Not Required to Support Her Claim with Expert Testimony

At the outset, we specifically note that Plaintiff is claiming that Dr. Zollman proceeded with her surgery in a manner by which she expressly refused to give her consent—i.e, Plaintiff's claim lies in the

920

fact that she expressly refused to consent to Dr. Zollman proceeding with the surgery if anyone but Dr. Zollman was involved with the procedure, as evidenced by Plaintiff drawing a line through that portion of the informed consent release. Although it may have been unrealistic for Plaintiff to have believed that Dr. Zollman would proceed solely in the face of an extensive surgical procedure, the fact remains that Dr. Zollman sought Plaintiff's consent to use assistants during the procedure, Plaintiff expressly refused to give consent for Dr. Zollman to use assistants, and Dr. Zollman proceeded to perform the surgery using assistants anyway. We make this clarification before proceeding because the district court confused Plaintiff's claim with those where the claim is that the physician-defendant should have warned or sought consent for something which he did not seek consent. Here, Dr. Zollman sought consent, Plaintiff refused, and Dr. Zollman proceeded despite the lack of consent.

As illustrated below, the district court failed to recognize the nature of Plaintiff's claim when it opined:

In Indiana, under the doctrine of informed consent, a physician must disclose the facts and risks which a reasonably prudent physician would be expected to disclose under like circumstances, and which a reasonable person would want to know. *Halbe v. Weinberg*, 717 N.E.2d 876, 879 n. 6 (Ind. 1999). A plaintiff asserting a claim must establish a duty owed to her and a breach of that duty which proximately causes a compensable injury. *Bowman v. Beghin*, 713 N.E.2d 913, 916 (Ind.Ct.App.1999) (citations omitted).

A physician must conform to the standard of care of a reasonably prudent physician in providing care to a patient. *Vergara by Vergara v. Doan*, 593

N.E.2d 185, 187 (Ind.1992). That standard requires that a physician provide information to a patient about a contemplated procedure that will permit the patient to make a decision whether or not to have the contemplated procedure. *Culbertson v. Mernitz*, 602 N.E.2d 98, 101 (Ind.1992) (citing *Joy v. Chau*, 177 Ind.App. 29, 39, 377 N.E.2d 670, 676–77 (1978)). The patient must be in a position to give an 'informed consent.' Where professional judgment and knowledge is required to determine what a reasonably prudent physician should tell a patient in order to obtain an 'informed consent,' expert testimony is required to establish what it is that a physician should tell a patient. *Culbertson*, 602 N.E.2d at 104; *Weinberg v. Geary*, 686 N.E.2d 1298, 1301 (Ind.Ct. App.1997), reh'g denied, trans. denied, 706 N.E.2d 168.

*Bowman*, 713 N.E.2d at 916.

Plaintiff presented no evidence establishing the standard of care of a reasonably prudent physician in providing the information at issue in this case. The Court presumes that a lay person does not know what roles surgeons, technical assistants, nurses, and other medical personnel assume or whether those roles can be specifically defined prior to every procedure. Likewise, a lay person does not know to what extent patients are advised as to the roles of those medical personnel or, more importantly, whether reasonably careful, skillful, and prudent practitioner in the same class as Dr. Zollman, would have explained, in detail, the intended role of each individual in the operating room. Plaintiff failed to offer any evidence to establish the standard with regard to the doctor's duty to inform a patient who marks through portions of an authorization form. In sum, Plaintiff failed to present evidence

to establish a duty owed to Plaintiff which is a necessary element of a medical malpractice/lack of informed consent claim.

(J.A. at 21–22) (footnote omitted).

In a footnote to its opinion, the district court found that the facts of *Bowman v. Beghin*, 713 N.E.2d 913 (Ind.Ct.App.1999) were distinguishable from those of the instant case such that Plaintiff's reliance on *Bowman* was misplaced. Specifically, the district court concluded that this case differs from *Bowman* inasmuch as Plaintiff "consented to liposuction surgery, and she underwent liposuction surgery." (J.A. at 22 n. 1).

The district court missed the point of Plaintiff's claim in the matter before us. The point is that Plaintiff *did not* consent to liposuction surgery as performed by any physician or assistant other than Dr. Zollman, and yet Dr. Zollman proceeded to do the liposuction surgery with the assistance of at least one other doctor and a technician. Although this case is not the mirror image of *Bowman*, the concept behind *Bowman* with respect to the need for expert testimony to support an informed consent claim is the same as in the matter at hand. For example, in *Bowman*, the plaintiff, who had suffered a back injury, sought medical advice from a neurosurgeon who recommended a surgery that involved two procedures. *See Bowman*, 713 N.E.2d at 914. The plaintiff obtained a second opinion from Dr. Beghin, who agreed to perform the same surgery as advised by the first doctor. *Id.* The plaintiff consented to two procedures, Dr. Beghin performed the surgery in the wake of this consent, yet he only performed one of the procedures. *See id.* The plaintiff continued to suffer from back pain, and filed suit claiming that Dr. Beghin failed to conform his treatment to that for which the plaintiff consented. *Id.* In resolving the plaintiff's claim, the Indiana court found that no expert testimony was necessary because a lay person could determine that the physician did not "respond accurately" to the scope of the informed consent. *Id.* at 917.

The same may be said for Plaintiff's claim in the matter at hand inasmuch as a lay person could determine that Dr. Zollman did not "respond accurately" to the scope of the informed consent. That is, Dr. Zollman performed the surgery in an manner for which he sought Plaintiff's consent, but for which Plaintiff refused to give her consent.[1] Simply put, because the Indiana court found that no expert testimony was needed with respect to an informed consent claim where the patient consented to a procedure, but the physician failed to do the procedure for which consent was given, the same should hold true where the physician was *not* given consent to do a procedure, but did it anyway. Contrary to the district court's finding, Plaintiff *did not* consent to have liposuction surgery in the manner for which Dr. Zollman expressly sought her consent. As a result, the district court erred in holding that Plaintiff's claim failed as a matter of law because she failed to come forward with expert testimony. Plaintiff was not required to adduce expert testimony to support her claim.

**B. Plaintiff Has Stated a Claim for Civil Battery**

In *Cacdac v. West*, 705 N.E.2d 506, 512 (Ind.Ct.App.1999), the Indiana Court

1. Although Defendant contended at oral argument that the informed consent form in question pertained only to the Zollman Center and not to Defendant, we are not persuaded by Defendant's argument where this document is that which specifically provides for Dr. Zollman to proceed with the lipsuction sugery.

of Appeals recognized that in previous cases, at times the courts have held that a plaintiff's claim sounded in negligence where a physician's actions went beyond the scope of the informed consent. *See id.* (citing *Boruff v. Jesseph,* 576 N.E.2d 1297, 1299 (Ind.Ct.App.1991) (holding that where a plaintiff expressly refused to allow the physician's partner to assist in the surgery, but the partner assisted anyway, the claim sounded in negligence)). However, the court of appeals also recognized that at times the courts have held that a plaintiff's claim lay in battery where a physician's actions went beyond the scope of informed consent—i.e., the physician proceeded when the patient expressly refused to give consent. *See id.* (citing *Kerr v. Carlos,* 582 N.E.2d 860, 864 (Ind.1991) (holding that the complete failure of a physician to obtain informed consent before proceeding with surgery is more appropriately characterized as a battery, not negligence)).

Having so noted, the *Cacdac* court opined:

> This case law regarding informed consent to medical procedures demonstrates some disagreement among the members of this court regarding whether a physician commits a battery when he or she fails to obtain informed consent from a patient. We find that no bright-line rule can be drawn from these cases between conduct that constitutes negligence and that which constitutes battery in cases where the plaintiff alleges that the consent given was based on erroneous or incomplete information. Instead, the failure to obtain informed consent claim has elements of both battery and negligence. The greater the physician's failure, the more akin to battery; the lesser the failure, the more akin to negligence. This is not to say that every omission in the explanation of a procedure and its risks and benefits gives rise to an action for battery.

Rather, an informed consent procedure that falls far short of that mandated by the relevant standard of care could, in some circumstances, support such a claim.

*Id.* (footnote omitted).

In the matter at hand, Dr. Zollman proceeded with the surgery in a fashion for which he sought consent, but was denied. As a result, Plaintiff's claim falls closer to that of an intentional tort (battery) than it does to one of negligence. If, for example, Dr. Zollman had not expressly sought Plaintiff's permission to use assistants, used them, and then Plaintiff sued for lack of informed consent, the claim would sound more in negligence inasmuch as the standard would be whether Dr. Zollman had a duty to inform Plaintiff that he was using assistants, whether he breached the duty, and if the breach was the proximate cause of any harm. However, where Dr. Zollman sought Plaintiff's consent, was denied that consent, and proceeded in the wake of that denial, this claim is more akin to an intentional unwanted touching or civil battery.

As a result, the district court erred in analyzing Plaintiff's claim under negligence principles, when the court held as follows:

> Plaintiff presented no evidence establishing that any failure to obtain an informed consent caused an injury. The *Bowman* Court acknowledged that there must be a causal relationship between the physician's failure to inform and the injury to the plaintiff. The court held that Bowman's claim that he would not have consented to the surgery but for the misrepresentations was sufficient to generate an issue of fact as to causation. In that case, the doctor performed a surgery to which the plaintiff had not consented. That differs from this case

in which Plaintiff consented to liposuction surgery, had lipsuction surgery, and expressed no complaints with the results of her lipsuction surgery.

(J.A. at 23 (citations omitted).) First, as noted, Plaintiff *did not* consent to the liposuction surgery in the manner by which Dr. Zollman performed it. Thus, the district court's finding that Plaintiff consented to exactly what was performed is wrong. Second, the plaintiff's claim in *Bowman* sounded in negligence under a "but for" theory; however, in the this case, Plaintiff's claim sounds in an intentional tort inasmuch as a touching occurred for which Plaintiff expressly refused to give her consent. Therefore, the district court erred in finding that Plaintiff's claim failed because she failed to show a causal injury. Rather, Plaintiff's claim rests on a battery theory which should be heard by a jury.

## CONCLUSION

We REVERSE the district court's judgment and REMAND the case for proceedings consistent with this opinion.

ALICE M. BATCHELDER, Dissent. I respectfully dissent. The plaintiff's complaint in this case contains three claims, each explicitly for medical malpractice and negligence. The complaint contains no mention of battery, lack of informed consent, intentional tort or punitive damages. Prior to trial, the plaintiff–without amending her complaint and purely by way of a letter to the defendant–added a claim based on lack of informed consent, claiming that had she known that others would participate in the surgery she would never have had the surgery. Indeed, the plaintiff has to this day made no attempt to amend her complaint to raise any of these claims. Even if plaintiff does not need to provide expert testimony to prove a claim of malpractice based on a lack of informed consent, I would hold that she has not pled

such a claim. Similarly, she has raised only by way of this appeal her battery claim and the concomitant claims that she needs only to prove nominal damages and is entitled to punitive damages. These claims were never before the district court, and punitive damages were never before even mentioned.

I would affirm the judgment of dismissal.